CLARA T. COHEA ET AL. v. ELIZABETH JEMISON.

1. ESTATE IN LAND.  *Executors.  Devise for sale.*
   The general rule is that a devise of lands to executors to sell passes an
   estate in it ; but a devise that land shall be sold by executors confers but
   a naked power.

2. SAME.  *Estate by implication.  When necessary for trust.*
   In the absence of language conferring an estate upon executors, an estate
   by implication will arise when, from the nature of the trust, it is neces-
   sary that an estate should exist in the trustee for its execution.

3. SAME.  *Executor ; power of sale.  Title in heir.  Ejectment.*
   Where land is not expressly devised to executors, a mere power to sell and
   distribute proceeds does not require an estate in the executors, and none
   exists by implication.  Until a sale, the title remains in the heirs, who
   may maintain ejectment for the land.

4. SAME.  *Carrying on farm.  Estate by implication ; when limited.*
   Mere discretion given executors to carry on the testator's farm one year
   can, in no event, confer upon them an estate by implication longer than
   possession is necessary for that purpose.

FROM the circuit court of the first district of Hinds county.

The HON. J. B. CHRISMAN, Judge, being disqualified to sit in
this case by reason of relationship to plaintiffs, C. M. WILLIAM-
SON, ESQ., a member of the bar, presided by agreement of parties.

In 1848 Perry Cohea died, leaving a considerable estate, con-
sisting in large part of lands in and adjoining the city of Jackson,
Miss.  He left a will, which was duly probated, and by which he
devised all of his estate.  The land in controversy belonged to him,
and this was an action of ejectment brought by the heirs-at-law of
said Perry Cohea, who were devisees under his will, for the pos-
session of $\frac{14}{15}$th of the lot in suit.

In the first item of said will is this language : " I do accordingly
devise, will and dispose of all my worldly estate," etc.  Other
clauses are as follows :—

· " 13. Having heretofore made a verbal agreement with Caswell
Clifton to convey to him, for the sum of six hundred dollars, all
that tract of land situated on the south side of the road leading

from Jackson to Clinton, and lying between the Hon. William L. Sharkey and John A. Grimball, and extending southward as far as said Sharkey's back line, and having received from said Clifton one hundred dollars, part of said six hundred dollars, it is my will, and my said executors are directed to consummate said agreement by conveying said tract of land to said Clifton, upon his paying to them the sum of five hundred dollars, the balance of said sum of six hundred dollars."

"14. It is my will that all my remaining lands in Hinds county shall be sold by my executors upon such terms and upon such credit as in their discretion shall deem most advisable for the interests of all concerned in my estate. It is my will, and my said executors are directed to lay off said remaining lands into lots of ten, twenty and thirty acres each, and sell the same upon the most advantageous terms, securing the payment thereon in a safe and satisfactory manner."

"15. Should my executors deem it best for the interest of my estate that they should keep together the negroes in this my last will mentioned, and the personal property mentioned in the eleventh item or paragraph thereof for the purpose of making a crop, then they are directed to do so and to delay the sale of the land mentioned in the preceding paragraph until that object be accomplished."

"16. It is my will and desire that my daughter Mariah Francis shall receive out of the proceeds of the sale of my estate, the sum of one hundred and fifty dollars per annum for her maintenance and education, and my said executors are directed to pay such sum annually into the hands of Joseph W. Matthews, trustee, etc., until my said daughter Mariah Francis shall attain the age of seventeen years."

"17. After all of my just debts and legacies are paid and charges on my estate provided for, it is my will and desire that all moneys remaining in the hands of my executors, from whatever source arising, shall be equally divided among my said children, Eliza Jane Stone, George J. Cohea, David A. Cohea, Edward W. Cohea, and the heirs of the body of my daughter, Sophia Jelks (now

deceased), the said heirs of her body collectively taken to receive, however, only such portion in said division as their mother were she living and named with my last aforesaid children, would have been entitled to under said division, said portion to be equally divided among said heirs of her body. But in said division or distribution of said money so remaining it is my will, desire, and intention that my son David shall be charged the sum of seven hundred dollars in favor of the said fund, so to be divided or distributed on account of the negro boy John, herein bequeathed to him, and in like manner my son Edward to be charged the sum of eight hundred dollars in favor of said fund on account of the boy Green, herein bequeathed to him, that is to say, the said David and Edward shall receive out of said fund only so much as added to the value herein fixed upon the negro John and Green respectively will make their shares equal respectively, to the portion received out of said fund by each of the other named children."

"18. I do appoint and nominate as the executors of my last will and testament, my son-in-law, J. Stone, my son David A. Cohea, and my friend Samuel Matthews, hereby granting to them or any two of them full power and authority to execute and carry into effect each and all provisions of this my last will and testament according to the true intent and meaning thereof."

It is not deemed necessary to set out any other provisions of the will.

About 1859 the executors named had the lands of the testator subdivided, and a part of them were sold as directed by the will. Among the subdivisions not sold, was a lot of about 26 acres, now in the city of Jackson, known as lot 6, situated east of the Illinois Central Railroad. Besides this, there were several other lots which were not sold, amounting, with this lot, to about 160 acres. Of the three executors, John Stone and D. A. Cohea died, and Samuel Matthews resigned, and in 1872 W. B. Jelks was by the chancery court of Hinds county appointed administrator *de bonis non* with the will annexed. Jelks was one of the three children of a deceased daughter, named in Perry Cohea's will, and was entitled by reason of this to an undivided $\frac{1}{15}$th interest in said lands. He had

possession of the same, and in 1873, in his own right and as administrator filed a bill against the other devisees in the chancery court of the first district of Hinds county, setting out the history of said lot 6, and praying that the court would order a division of it into small lots, and asking that a sale thereof should be made by him as commissioner in order that there might be a division of the proceeds between himself and the other owners.   The court decreed a sale, appointing S. B. Thomas commissioner, but nothing appears to have been done under the decree in that case, which was styled *Jelks* v. *Boatner et al.*   In 1874, Jelks filed another bill for partition of the remainder of the lands lying west of the railroad among the devisees in the will, and partition of this land was duly made. The style of this case was *Jelks* v. *Cohea et al.*, and the parties were the same as in the other case.

After this, said W. B. Jelks remained in possession of said lot 6, and finally disposed of it in small lots to different parties.

On June 19, 1889, the appellants, heirs of said Perry Cohea, and devisees under his will, brought this action of ejectment against the appellee, Elizabeth Jemison, who was in possession of a portion of said lot 6, under purchase from said W. B. Jelks.   Plaintiffs sought to recover an undivided $\frac{14}{15}$th interest in said land.

On the trial the above facts were shown, and the identity of the plaintiffs, as heirs, was established.   It was also shown that most of the original devisees had died many years ago, only two of the original parties being now alive.

The plaintiffs' testimony being concluded, defendant moved to exclude the same, which motion was sustained, and a judgment was entered in favor of defendant, from which plaintiffs appeal.

The only question considered by the court is, whether the plaintiffs had such legal title to the land as authorized a recovery.

*E. E. Baldwin*, for appellants.

At common law a trustee takes only that interest which is necessary to carry out the purposes of the trust; and when the execution of the trust no longer requires the existence of the legal estate in him, it vests in the person beneficially entitled.   *Jefferson* v. *Morton,*

2 Saunders, 11; 1 B. & C. 336; 7 A. & E. 636 (34 Eng. Com. L. R.).

Section 1204 of the code of 1880 also puts equitable titles on the same footing with legal estates in many respects. Where the whole beneficial interest belongs to the person for whose use it is given, a court of equity will not compel a trustee to execute a trust against the wishes of a beneficiary. It is his election which changes the character of the estate. *Craig* v. *Lester*, 3 Wheat. 563.

(Counsel here made an elaborate argument, citing many authorities to show that there had been an equitable reconversion of the property; but, in view of the opinion of the court, it is not necessary to give these.)

*Calhoon & Green*, for appellee.

A legal title in the plaintiff is essential in the action of ejectment. 11 S. & M. 249; 13 Ib. 103; 25 Miss. 177; 33 Ib. 192; 40 Ib. 793; 30 Am. Dec. 513; 42 Ib. 201; 60 Ib. 162.

The sole dependence of plaintiffs to establish a legal title is on the will of Perry Cohea. So far from its devising the legal title to the land to the ancestors of plaintiffs, the will shows expressly that they *never should have the land,* but only the proceeds of the sale of it.

The 14th clause provides: " It is my will that all my remaining lands in Hinds county be sold by my executors." And no delay in the sale is allowed, except under the 15th clause, by which the testator provides that if his executors think best to make a crop, they shall delay the sale of the land until that object is accomplished. The 17th item provides for the distribution of money in unequal amounts to named distributees. If the intention of the testator is to govern, it is clear that the distributees or devisees were to take no title to the land. Code 1880, § 1983, provides that executors shall " have a right to the possession of the real estate so far as may be necessary to execute the will." Code 1871, § 1111, says the same thing. So of the code of 1857, p. 437, art. 55.

The right to ejectment, therefore, was in the executors and not in the heirs, and so it was at common law.

Code 1880, § 1984, provides that where a will directs a sale of lands, an administrator with the will annexed may make the sale. So does the code of 1871. See also code of 1857, p. 458, art. 136 ; Hutchinson's code, p. 671, art. 113.

The legal estate vests in the executor or trustee where the testator has imposed upon him any trust or duty, the purpose of which requires that the estate should be vested in him. 3 Jar. on Wills, 52, note 2 and authorities cited ; Ib. 62, 63 ; 1 Williams' Exrs. 725 ; Toller's Exrs. 413, etc. ; Tyler on Ejectment, 40, 60, 192, 193, 199 ; Boone on Real Prop. § 166 and authorities cited ; Perry on Trusts, § 304 *et seq.*

The distinction between cases where the title goes to the executors and survives and those cases where it does not, but where the power is unexecuted and it goes to the heirs, is quite plainly drawn. It is this :—

1. The title goes to the executors and survives and will be executed by the courts or the administrator with the will annexed in all cases where the intent is that the land *shall be sold at all events.*

2. It does not go to the executors, and does not survive, where there is given a mere naked power to sell, and whether there is to be a sale or not is left to the *judgment* of the executors. In support of this we ask the careful attention of the court to *Bartlett* v. *Sutherland,* 24 Miss. 395 ; *Clark* v. *Hornthal,* 47 Ib. 434. These were cases where the wills gave a mere discretionary power to sell. We call attention also to *King* v. *Talbert,* 36 Miss. 367, and *Jelks* v. *Barrett,* 52 Ib. 314, where the court held that the power did not die with the executors. See also 62 Miss. 412 ; 64 Ib. 259 ; Sugden on Powers, 194.

The caption of this will is : " I *devise,* will and dispose of all the worldly estate," etc. ; the 13th item directs the executors to carry out a contract for the sale of land by executing a deed to Clifton ; the 14th commands them to sell all his remaining lands in Hinds county ; the 15th authorizes a delay of sale for making a crop by the executors ; the 16th gives out of the proceeds of sale an annuity to his daughter ; the 17th provides for general dis-

tribution ; the 18th empowers the executors or any two of them to execute the will. This last clause in no way affects the specific devise for sale. That remains an authoritative announcement of the testator's will, that the *lands should be sold* and the proceeds distributed. If the beneficiaries have any rights, they are to be asserted in equity and not at law.

*M. M. McLeod,* on the same side.

Under the 14th and 17th items of the will, appellants have no title and no right to the possession of the land in controversy, because under the will the testator converted his land into money, and gave that money and not the land to the devisees.

The plaintiffs cannot claim as heirs-at-law, because the will breaks the descent as to their ancestors and vested the fee in the executors. In such case the heirs-at-law cannot maintain ejectment. The will is the law of the case. A mere reading of this will convince the mind that its draftsmen used with legal precision the words adapted to make plain the intention of the testator. " I do accordingly *devise,* will and dispose of all the worldly estate" is the key to his meaning. The term devise applies only to real estate. 1 Bouvier L. Dic. 474. " All my worldly estate" certainly includes real as well as personal property. The word estate refers to the land mentioned in the will, and explains the nature of the interest devised. 1 Bouvier L. Dic. 539 ; 2 Preston on Estates, 146, 147 ; Cruise Digest, vol. 6, p. 191, § 62.

The 13th item of the will directs the executors to convey the land to Clifton. The 14th item directs that the land shall be sold by the executors. An estate in fee will pass when an act is directed to be done which cannot certainly and effectually be accomplished unless it be determined that an estate in fee is devised. 2 Preston on Estates, 71, 72, 207, 208 ; 4 Kent, 540 ; Cruise Digest, vol. 6, p. 246.

Even if it be held that the devise of the land to be sold is not a devise of the title to the executors, still the appellants cannot recover in ejectment, for under the will the executors must necessarily have the possession in order to obey the direction of the

testator.   Code 1890, § 1983 ; Code 1871, § 1111 ; Code 1857, art. 55, p. 436.

W. B. Jelks as administrator with the will annexed held possession of this land, and that possession was necessary to execute the will.   He could not make a sale and conveyance to a purchaser without it.   1 Sug. on Powers, 134 note 1 ; 146 Mass. 100 ; 3 Wheat. 563 ; 1 Baldwin C. C. 166 ; 1 Am. Law Reg. (N. S.) p. 42.

Jelks stands in the place of the three executors named in the will, and is clothed with authority previously held by them jointly after selling the land.   The question here is not as to the powers of the executors under the will, nor as to the person who shall execute them, but as to the title of plaintiffs.

COOPER, J., delivered the opinion of the court.

The general rule is that a devise of lands to executors to sell passes the interest in it ; but that a devise that lands shall be sold by executors confers but a naked power.   7 Am. & Eng. Enc. Law, 275.

But in the absence of language conferring an estate upon the executors an estate by implication will arise where from the nature of the trust conferred, it is necessary that an estate should exist in the trustee for its execution ; and where an estate is expressly given, it will be limited in duration to the trust to be performed, if a precise period for its termination can be shown.   3 Jarman on Wills, chap. 34.

Clearly Cohea did not expressly devise the lands in controversy to his executors, and, if they took any estate in them, it arose by implication from the power and duty of selling the lands and distributing the proceeds.

The better view, and that supported by the weight of authority, is that a mere power to sell land and distribute the proceeds does not require any estate in the executor and therefore none exists by implication, and consequently that until the sale the title and right of possession remain in the heir-at-law.   *Greenough* v. *Wells*, 10 Cush. (Mass.) 571 ; *Fay* v. *Fay*, 1 Ib. 93 ; *Herbert* v. *Nicol*, 1 Saxt. (N. J. Eq.) 141 ; *Ferebee* v. *Proctor*, 2 Dev. & Bat. 439 ; *Hall* v.

*Burr,* 9 Johns. 104; *Haskell* v. *House,* 1 Const. Reps. (S. C.), 106; *Bèrgen* v. *Bennett,* 1 Cain Cas. 1; *Bogert* v. *Schauber,* 7 Cow. 187; *Romaine* v. *Hendrickson,* 24 N. J. Eq. 21; 1 Williams on Executors, 725; 7 Am. & Eng. Enc. Law, 725.

The discretion given to the executors to carry on the farm of the testator for one year could in no event confer upon them an estate by implication for a longer time than the possession was necessary for the purpose indicated.

It follows that the legal title to the land sued for remains in the heirs-at-law of the testator, and the court erred in excluding the plaintiffs' evidence.

*Reversed and remanded.*