WILLIAM W. WHITFIELD ET AL. *v.* JOHN G. THOMPSON ET AL.

WILLS.   *Power of sale.   Construction.   Failure to sell.   Estate taken by heirs.*

The provision of a will by which certain lands are or are not to be sold by the executor in his discretion constitutes a disposition thereof, so as to exclude them from other provisions of the same will by which all lands not otherwise disposed of were directed to be sold without reference to the discretion of the executor; and on failure of the executor to sell the first-mentioned lands the heirs took them in fee.

FROM the chancery court of Clay county.

HON. HENRY L. MULDROW, Chancellor.

Whitfield and others, appellants, were complainants, and Thompson and others, appellees, defendants in the court below. From a decree in favor of defendants, the complainants appealed to the supreme court.

The bill of complaint charged that they were the children of W. W. Whitfield and the only grandchildren of Wm. Whitfield; that Wm. Whitfield died in the year 1854, possessed of large bodies of land, then in Lowndes county, now Clay county; that he had three children—W. W. Whitfield, John A. Whitfield, and Lucy A. Whitfield; that John A. and Lucy A. Whitfield died intestate, leaving no issue;

that said Wm. Whitfield executed a last will and testament, which was duly probated and recorded (the material parts of the will are set out in the opinion of the court) ; that the land in controversy was a part of the land owned by Wm. Whitfield at the time of his death, but was no part of the land specifically devised in the will, but was a part of the residuum; that it was never deemed necessary by the executors to exercise the power never deemed necessary by the executors to exercise the power of sale over it given by item twelve of the will, and that there never was any pretense of a sale of it by the executors, and as the power was never exercised, it had lapsed; that by item thirteen the lands were devised to the executors, with express and direct order to sell and reinvest the proceeds in other property, to be held for life by the children of Wm. Whitfield, and at their deaths to his grandchildren; that, after the death of John A. Whitfield, W. W. Whitfield and Lucy A. Whitfield, instead of seeking a sale of the lands for the purpose of reinvestment of the proceeds, exercised their right of election, and took the lands, as was their right; that said W. W. and Lucy A. Whitfield took possession of the lands and rented and mortgaged them for loans of money, thus clearly expressing their right of election in kind to take the property itself as an investment; that they wanted to sell the land, but no one would buy it, because they could not make title, and they allowed it to be sold for taxes so as to get a semblance of title; that designedly and purposely the lands were permitted to be sold for taxes, and were purchased at the tax sale by W. W. Whitfield in the name of his wife, she having no knowledge of the sale and not furnishing any money to buy the lands; that, having this pretense of title, they sold it, and appellee, Thompson, bought that land in controversy under a deed made by the wife of W. W. Whitfield. The prayer of the bill was for the cancellation of this deed as a cloud on the title of complainants, and that the title be quieted and declared in complainants, and for rents.

*R. C. Beckett, J. J. McClellan,* and *William Baldwin,* for appellants.

In construing any power granted by the will, we must look to the whole will in order to get the real intention of the testator, and we look to the final disposition made of the proceeds of the sale, in particular, to determine what the intention of the testator was as to whether there should be a sale before distribution or not; and if the disposition made by the testator of the proceeds of the property make it necessary that the property should be sold, then the power of sale is imperative, though the same may appear in the language of the granting clause of the will to be in the discretion of the executors. This very question has been before the courts repeatedly, and in all cases, so far as we have been able to find, the courts hold that, even though the language of the will would imply a discretion on the part of the executors as to the making of the sale, yet, if the final disposition of the proceeds requires a sale to be made before distribution, then the discretionary power applies only to the time when the sale should be made; but it will be considered that the sale must finally be made, and thus work conversion. *Wurtz* v. *Page,* 19 N. J. Eq., 365, 375.

"The doctrine of equitable conversion has its origin in the maxim of equity, that that is regarded as done which should be done. It is only an application of that maxim to a certain class of facts. The future duty is the present deed. The duty may arise also because a sale and conversion are indispensable to the execution of the testator's scheme. In such a case the main end includes all means necessary to its accomplishment. Whatever conflict there may be among the adjudications on this question in the application of the doctrine to the different state of facts, that conflict does not affect the doctrine itself." *Penfield* v. *Tower,* 1 N. D., 216–223.

"The direction may be expressed; it may be implied; it may necessarily result from the other provisions of the will because indispensable to their execution; and in the last case

the conversion results on the principle that the testator must have intended that everything should be done essential to the execution of his scheme." *Penfield* v. *Tower, supra; Perot's Appeal,* 102 Pa. St., 235; see note, exceptions to the rule, *Ford* v. *Ford,* 5 Am. St. Rep., 144.

"Where a will contains a power of sale, not mandatory in terms, but it is apparent from the general scope and tenor of the will that the testator intended his realty to be sold, the power of sale should be held imperative, and the doctrine of equitable conversion applied." *Dodge* v. *Williams,* 46 Wis., 70–97; *Gould* v. *Taylor,* 46 Wis., 106; *Dodge* v. *Pound,* 23 N. Y., 69; *Craig* v. *Leslie,* 3 Wheat., 563; *Cook* v. *Cook,* 20 N. J., 373.

Mr. Whitfield had a very valuable estate, and he dealt with it in detail, and with very great care undertook to dispose of all of his property, impressing his will and intention as to how every piece of property he owned should be finally disposed of. When the court has determined what was the intention and purpose of the testator, it will so construe the will as to uphold and carry out the will and purpose of the testator, if the same is not in conflict with law. 4 Leading Cases in the American Law of Real Property, 35; 1 *Ib.,* 57, 58, 59; *Perkins* v. *Sank,* 81 Miss., 358, 362.

"In noting cases of the enlargement of devises without words of limitation, from life estates to fee simple, it is of course hardly necessary to say what has been, in effect, said over and over again, but perhaps never better than by the court in *Gulliver* v. *Poytz,* 3 Wilson, 141." "Cases on wills may guide us to general rules of construction; but unless the case cited be in every respect directly in point and agree in every circumstance, it will have little or no weight with the court, which always looks upon the intention of the testator as the polar star to direct it in the construction of wills." 1 Leading Cases on the American Law of Real Property, 59.

Applying the principles above set forth to the provisions of

Mr. Whitfield's will, now under consideration, we find that we are not to be guided solely by the language used in the first part of item twelve of the will; it apparently leaves it to the discretion of the executors as to whether or not there shall be a sale; but we must look to the whole of clause twelve and other parts of the will to find the real intention of the testator. When we look to the disposition made by Mr. Whitfield of the proceeds of the property authorized to be sold in item twelve, we find that he provided that the same should be divided into two parts: One-half should be divided equally among three children, to be held by them absolutely; the other half of the proceeds, if not otherwise consumed, . . . "I direct my executors to invest, or so much of said other half as may be left in their hands unappropriated, in some active and productive property, of which each one of my said children is to have one-third, to be held under the limitations and conditions before set forth."

When we consider all the provisions of item twelve, together with the general scope and scheme of the whole will of William Whitfield, we can but reach the conclusion that it was the intention of the testator that these lands mentioned in item twelve should be sold by the executors and invested as directed in items twelve and thirteen of the will. If this was not done, the scheme and intention of the testator would not be carried out. If such was his intention, then there was an equitable conversion, and the title to these lands passed under the provisions of the will, which gave to the life tenants a life estate, with the remainder over to appellants. 7 Am. & Eng. Ency. Law (2d ed.), 465; *Wurtz* v. *Page, supra; Burr* v. *Simms,* 1 Whorton (Pa.), 252, 261.


*J. G. Millsaps,* and *A. F. Fox,* for appellees.

In reaching a determination of the matters at issue in this case several steps may be considered as fully established: That no special devise of the lands in question was made to any one;

that the land in question was dealt with in the will by giving a power to the executors to sell; that pending the execution of this power the title vested and rested in the heirs at law. We do not understand the counsel for appellants to make any contention that this was not true; but, in any event, the matter is thoroughly settled by the courts (*Cohea* v. *Jemison,* 68 Miss., 510; *Jackson* v. *Burr,* 9 Johnson, 104; *Jackson* v. *Schauber,* 7 Cowan, 187; *Morse* v. *Bank,* 12 L. R. A., 62; 1 Williams on Executors, 549, 550, and note) ; that the power given to sell the residue lands was never exercised. This is set out in the bill of appellants.

These steps establish the legal title to the land in question in the heirs at law. Then the only question that occurs is : Did they hold it subject to any equities that might be worked out either by conversion or reconversion or subject to equities or trusts of any kind ? If not, then the heirs at law held the absolute, legal, and equitable title, and the appellees holding through them have an unquestionable right both in law and in equity to the land.

The appellants' counsel contend that there is an equitable conversion in this case, but the will and the non-execution of the power that was given to the executors clearly do not present a case for the application of this doctrine. Equitable conversion has its origin in the maxim that "equity considers that as done which ought to be done." The foundation of the doctrine is in the duty that is imposed to sell at all events, and in the case at issue no imperative duty was placed by the testator on the executors to sell the residue land, and no conversion could therefore arise. The power given was purely discretionary. The testator left it to their judgment whether they would sell this land or not, subject to the restriction that it was not to be sold in two years. The power being discretionary, in default of its execution, no equity of any kind could arise in regard thereto, because the execution of discretionary powers cannot be

interfered with by the courts. Tiedeman on Real Property, 554.

A case for equitable conversion can never arise where the power is discretionary. To hold otherwise would be to make for the testator a will he never meant. The sole use of conversion or reconversion in application to wills is to prevent the real will of the testator from being defeated.

To create a case for the application of the doctrine the direction of sale must be imperative, or it must be necessary to sell in order to carry out the manifest intention of the testator. Adams' Equity, 135; Bispham's Equity, 420–422; 2 Underhill on the Law of Wills, 957, *et seq.;* 3 Pom. Equity Jurisprudence, sec. 1160; *Ford* v. *Ford,* 5 Am. St. Rep., 141, and note reviewing the subject of conversion; 7 Am. & Eng. Ency. Law (2d ed.), 465–467, and numerous cases cited therein under note on p. 467; 9 Cyc., 831, 832, and numerous citations thereunder.

Our own court decided the question in *Montgomery* v. *Milliken,* 5 Smed. & M., 494.

Argued orally by *J. J. McClellan,* for appellants, and by *A. F. Fox,* and *J. G. Millsaps,* for appellees.

MAYES,* Special Judge, delivered the opinion of the court.

William Whitfield formerly owned a large estate in Lowndes county and in what is now Clay county. In 1854 he died, having executed a will, the proper construction of which gives rise to this litigation. The testator left two sons—John A. and William W.—and a daughter, Lucy Ann. The two sons were named as executors, and the will, after certain legacies of personalty, provided in its earlier items that certain designated lands and slaves should go to each of his three children for life (with cross-remainders in the event of death without living

---

*Chief Justice Whitfield, because of relationship to some of the parties to the suit, was disqualified and recused himself; Edward Mayes, Esq., a member of the supreme court bar, was appointed and presided in the case in his stead.

issue) and with remainders over to the grandchildren. The testator owned several thousand acres of land which were not included in those specific devises, and which we shall designate as the "residue lands." John A. Whitfield and Lucy died without issue, and William W. conveyed those residue lands to various parties, executing warranty deeds purporting to convey estates in fee simple. He has now died, and his children claim as remaindermen. The question in this case, therefore, is whether under the will those residue lands passed to the testator's children for life, with remainders over to the grandchildren, or whether as to such lands the testator died intestate, and they passed by operation of law to the children in fee.

Before setting out the directly controlling provisions of the will, some of the earlier provisions should be noted. Items seven, eight, and nine, respectively, gave to Lucy, William, and John, each, certain described slaves and lands for life, with remainders over to the grandchildren, as stated above; and in item seven, which made the devise to Lucy, it was further provided that:

"If the plantation and land attached herein specially devised to the said Lucy Ann shall be materially less in value than the valuation of the lands and plantation hereinafter specially devised to the said John A., then I also devise to her a sufficient quantity of any other of my lands (not hereinafter specially devised to either of my sons) as will make her plantation and lands equal in value to those devised to my said son, John A., such land to be selected for her by my executors so as not to separate portions of a tract nor injure materially the value of my other lands adjoining."

Item eleven provided for a division of those slaves not specifically bequeathed in the preceding items, with certain prohibitions against the breaking up of families. Then came the directly controlling items, which are twelve, thirteen, and fifteen, and which are as follows:

"Twelfth—I will and direct my executors after two years from my death they may sell, if deemed by them compatible with the interest of my children, the residue of all the lands and real estate I own, or may hereafter acquire, on such terms as they think best for my children. One-half of the proceeds of the sales is to be equally divided among my said children and paid to each of them in cash. And they are, respectively, to have and to hold the same absolutely. The other half of the proceeds of the sales, if not otherwise consumed and appropriated in equalizing the respective values of the lots of slaves bequeathed hereinbefore in items tenth and eleventh and in defraying the expenses of the execution of this will and in paying legacies, I direct my executors to invest, or so much of said other half as may be left in their hands unappropriated, in some active and profitable property, of which each of my said children is to have one-third, to be held under the limitations and conditions before set forth.

"Thirteenth—The residue of my personal property I direct my executors to sell, and the proceeds of the sale thereof, together with all my other property not before herein disposed of, I direct them to convert into money, and after defraying all the expenses necessarily incident to the execution of this my will, I hereby instruct said executors to invest in some profitable, valuable, and productive property, to divide the same into three equal parts, one of which I give to each of my said children, to be held by them subject to the limitations and conditions before created and set forth.

"Fifteenth—The property herein given, devised, and bequeathed to each of my children—except the special legacy to each one of five thousand dollars first to be provided for, the bequest of the mules to my son, John A., and the half of the proceeds of the sale of my lands directed in item twelve to be paid to them in cash—is given, devised, and bequeathed to each one for and during the term of his natural life, with remainders and limitations as before set forth. Nevertheless I hereby

authorize my sons, if they desire or either one desires, to sell the real estate devised to him for the purpose of purchasing other lands or other productive property, or if either one desires to sell any refractory or unprofitable slave, or any slave it is necessary to his interest to sell for any special objection to the keeping of said slave, to sell the real estate for the reasons before given, and the title shall be good to the purchaser. The proceeds of this sale, however, are to be invested in other productive property and are to be held under the same limitations and conditions with the property so sold by them.

"And if my daughter, Lucy Ann, shall for the same reasons desire to sell any portion of the real estate or slaves herein devised and bequeathed to her, I authorize my said sons to sell such property for her, she to execute the conveyance to such as she desires to sell, and the proceeds of such sale or sales are to be invested by my said sons in valuable property and held by her under the same limitations and conditions with the property sold."

It does not appear that it ever became necessary for the executors to select any of the residue lands for the daughter under the seventh item of the will. It does appear that nothing was ever done by them under the twelfth clause. The power of sale thereby conferred was never exercised. It will be seen, therefore, that this case turns on a question of equitable conversion, as to which it was said in *Craig* v. *Leslie*, 3 Wheat., 563 (4 L. ed., 460): "The principle upon which the whole of this doctrine is founded is that a court of equity, regarding the substance, and not the mere forms and circumstances, of agreements and other instruments, considers things directed or agreed to be done as having been actually performed, where nothing has intervened which ought to prevent a performance. This qualification of the more concise and general rule that equity considers that to be done which is agreed to be done will comprehend the cases which come under the head of equity." In *Harrington* v. *Pier,* 105 Wis., 485 (82 N. W., 345; 50 L. R.

A., 307; 76 Am. St. Rep., 924), a clear exposition of this doctrine is given as follows (italics ours) : "The rule is that where there is *a positive* direction in a will to convert the real property into personalty, or there is a power of sale in a will and bequests of such character as to *plainly* indicate a testamentary intent that such power shall be executed to provide the means of satisfying them, *or* where the provisions of a will *cannot* be carried out *without* converting the realty into personalty, and the conditions are such that the testator *must* have contemplated that such conversion would take place to that end, courts of equity deal with the estate as personal property from the time the will takes effect."

The dispute in this case is not so much over the rules of testamentary construction, which govern it, as over the practical application of those rules in the special instance. All are agreed that the intention of the testator, once ascertained, controls, and that such intention is to be ascertained, not by a nice or hypercritical scrutiny of single provisions of the will, but by a broad study of the whole instrument. All agree that if the will, as a whole, clearly shows that the intention of the testator was that the residue lands should be sold at all events, any apparent discretion committed to the executors must be limited merely to the time or terms or other circumstances of the sale, and that by their omission to sell such manifested intention shall not be defeated, but that by operation of the equitable doctrine of conversion (or double conversion, in a case like this) the legal character of an estate for life, with remainder over to the grandchildren, will be impressed on these lands just as if they were lands which the executors had purchased with proceeds of the residue lands.

The true and final controversy, therefore, is this: Does the direction in item twelve, that the executors "shall sell, if deemed by them compatible with the interest of my children," invest the executors with a discretion to sell or not to sell, as they shall deem best, or does the will, taken as a whole, impose on

them a mandatory direction to sell at all events and give them a discretion only as to the time and terms of the sale? The appellants, who claim to be remaindermen, contend, first, that such a mandatory direction to sell at all events is found in item twelve of the will, especially if reference be had to the whole will for evidence of the general intent of the testator. Clearly, there is no language in item twelve or in the will which expressly confers on the children any estate in the residue lands; neither is there any devise of those lands to the executors. The general rule is that a devise merely that lands may or shall be sold by the executors passes no interest or estate, but only a naked power. The language is: "I will and direct my executors after two years from my death they may sell, if deemed by them compatible with the interest of my children, the residue of all the lands and real estate I own, or may hereafter acquire, on such terms as they may think best for my children." It is settled law, by decisions in this state, as in others, that a testator may devise to his executor a power to sell lands in such manner as to confide to his purely personal discretion the decision whether a sale shall be made at all or not. The language which was held in *Montgomery* v. *Milliken,* 5 Smed. & M., 151 (43 Am. Dec., 507), to produce that result, was this: "The Mississippi property I wish to be sold by my executor at his own discretion." The terms employed in *Bartlett* v. *Sutherland,* 24 Miss., 395, were these: "My executors shall be at liberty at any and all times to sell or dispose of any part of my estate at private sale, if in their judgment it will promote the interest of my estate." In *Holland* v. *Cruft,* 3 Gray (Mass.), 162, the words used were: "I recommend to my executor that as soon after my decease as he shall think it expedient . . . he sell," etc. And in *Ford* v. *Ford,* 70 Wis., 19 (33 N. W., 188; 5 Am. St. Rep., 117), the will provided that the executors "shall" at their "discretion" sell and invest the proceeds. The language of this will is express that the executors "may sell if deemed by them compatible with the

interest of my children"—that is, of all the children. So far
as the terms are concerned in which the testator has embodied
his intention in this carefully prepared testament, they are
much similar to those employed in the cases above, and quite
as clear. Indeed, it would be rather difficult concisely to refer
the question of sale or no sale more directly to the judgment
of the executors, and the determination by them that such sale
is compatible with the interest of all the children is made a
condition to any power to sell.

But it is said that such clearness of expression is only ap-
parent; that, when the remainder of clause twelve is considered,
a contrary intent is revealed, and that the discretion committed
to the executors was given only as to time and terms of sale;
that without such sale there could be, of course, no proceeds,
and one-half of such proceeds could not be divided amongst the
children in cash, to be held by them absolutely, nor could the
other one-half be applied, so far as needed, to the equalization
of bequests, etc., or any residue of such one-half be invested.
Manifestly, there could be no proceeds to dispose of unless there
was first a sale. But the defect in the argument is an assumption
that clause twelve shows a positive intention of the testator
that there shall be, at all events, a distribution and investment
of such proceeds. The clause must be read as a whole. It
consists of two sentences, each rhetorically complete; but there
is between them a close connection in purpose. The first gives
the power to sell; the second directs the disposition to be made
of the proceeds. The first expressly declares that the sale may
be made if deemed by the executors compatible with the in-
terest of the children; and we do not find in the second any
expressions or directions which seem to be designed to restrict
or revoke the personal discretion thus plainly given to the ex-
ecutors or to produce that result by necessary implication. It
seems to us quite clear that the intention of the testator in re-
spect to the unproductive residue lands, as evidenced by this
clause, was to permit them to descend to his heirs at law in

fee, but to invest his two sons, his designated executors, with a discretionary power at any time after two years to determine whether it would not be compatible with the interest of all, including the daughter, to sell the lands and dispose of the proceeds as directed in the second sentence. There is no want of harmony between the two sentences. The second merely defines the ultimate question which the executors, under the personal discretion committed to them by the first, are to decide.

In the second place, it is urged by the appellants that, if clause twelve does not itself require the sale of those residue lands, and does, indeed, leave the sale of them discretionary with the executors, then, inasmuch as the executors never did sell, the whole of clause twelve lapsed by non-execution, became a nullity, and the lands are to be treated as if such power of sale had never been given. Wherefore, it is argued, such lands are included within the mandatory direction of clause thirteen, which clearly imposed the duty to sell and to invest under the limitations prescribed by the will the proceeds of "all my other property not before herein disposed of." In other words, it is argued that, since the will did not devise the residue lands to either the children or the executors, but the title descended to the heirs under the rule announced in *Cohea* v. *Jemison,* 68 Miss., 510 (10 South. Rep., 46), and since the executors did not exercise the discretionary power given them by clause twelve, then such lands were "property not before herein disposed of," within the purview of clause thirteen. This construction, however, we consider too narrow. It turns altogether on too technical a meaning attributed to the words "disposed of" as they were used by the testator. Those are not words of legal technicality, but are in general use. Even as defined in the cases, great variety and many shades of meaning have been assigned to them. See 9 Am. & Eng. Ency. Law, p. 540. Webster assigns to them certain meanings which immediately recommend themselves, because the reader recognizes at once that they clearly embody familiar and well-understood uses of the term. Amongst oth-

ers he says: "To dispose of. (a) To determine the fate of; to exercise the power of control over; to fix the condition, application, employment, etc., of; to direct or assign for a use. (b) To exercise finally one's power of control over; to pass over into the control of some one else, as by selling," etc. It is true that clause twelve devised no interest in the residue lands to either children or executors, but the discretion which it did devise to the executors was a power at any time after two years to sell the same, pay each child one-half of his or her interest in cash, and invest the remainder in profit-paying property for life, with remainders over to grandchildren. Thus especially it was devised, in effect, that the fee of the daughter might be divested, and one-half of her interest be converted into a life estate, with remainders to her children, if any, without her consent. Certainly this was a material and serious dealing with the property, and we think that thereby the residue lands were "disposed of" within the true meaning of clause thirteen.

This conclusion is confirmed by considering the fact that the directions of clauses twelve and thirteen are so different that it is in the highest degree unlikely that the testator intended to apply both to the same property. For instance, clause twelve in effect forbade the selling of the residue lands until two years after the death, while clause thirteen in effect authorized the selling immediately of the property intended by it; and, again, under clause twelve, the executors, after the sale, were required to pay over one-half of the proceeds in cash, to be owned by the children absolutely, and were, in effect, forbidden to invest more than one-half in life estates with remainders, while by clause thirteen they were required to invest the entire proceeds in such estates. Whatever property the testator may have had in mind when he published clause thirteen, it seems quite evident that his intention did not include the same property about which he was at the same time making such inconsistent provisions as those in clause twelve. Nor can the fact that the executors never exercised the powers given to them by clause twelve affect the question. Their

failure to act would not be allowed to defeat the ascertained intention of the will, it is true; but that failure cannot have operation to eliminate wholly from the will one of its clauses, and thereby to impart to the will a different meaning from what it would have if they had acted. The intention of the testator and the meaning of his will are determinable from the will itself, and not from the subsequent conduct of the executors.

Thirdly, it is claimed by the appellants that clause fifteen is important here. That clause provides that "the property herein given, devised, and bequeathed to each of my children, except" (certain items named), "and the half of the proceeds. of the sale of my lands directed in item twelve to be paid them in cash, is given, bequeathed, and devised to each one for and during the term of his natural life, with remainders and limitations as before set forth;" and it is said that, if the twelfth clause does dispose of the residue lands, so that they are not included in the directions of clause thirteen, then the foregoing language of clause fifteen operates to fix on them the character of life estates with remainders as described. If this clause does so operate, it is necessarily because it either has a direct disposing effect as to those lands or has controlling value as evidence of the testator's intention in publishing clause twelve. A careful study of the entire clause convinces us that the testator did not intend by it to dispose of any of the property owned by him in either its original or any secondary form, but only intended to devise to his sons the right and power to sell the respective properties previously devised to them and to their sister in severalty for their respective lives, to convey the fee, and to reinvest the proceeds thereof on the same limitations as the property sold. It is merely a devise of powers of sale, and has no reference to the property disposed of by clauses twelve and thirteen; for neither of those clauses makes any devise of lands to the sons or the daughter, their direction being only that the proceeds of the sales, when made, should be invested in active and

profitable "property"—which, of course, might have been bonds, stocks, or other productive personalty.

Nor do we consider the language of clause fifteen, relied on, as furnishing any evidence of an intention in the testator to direct a sale at all events of the residue lands. That language is merely a recital in brief of certain provisions of his will, made as an inducement to, and an explanation of, those other provisions immediately following, which contain the devises of powers of sale. The language employed does not appear to have been intended to control or influence any of the previous provisions; and while it speaks of "the half of the proceeds of the sale of my lands directed in item twelve to be paid them in cash," we find in this expression no inconsistency with the proposition that the sale of lands authorized by clause twelve was altogether discretionary with the executors. As we have already shown, the executors were only empowered to sell the lands at their discretion; but if the lands should be sold, they were then "directed" (that is, required) to pay over one-half of the proceeds in cash. And it was exactly correct, and not inconsistent, to speak of that provision as a direction, although the question of sale or no sale was still left to the discretion of the executors.

Regarding the will as a whole, and taking all of its provisions into view, we do not find in it any such clear evidence of intention on the part of the testator that the residue lands should be sold at all events as will overrule the express reference of the question of sale or no sale to the personal determination of the executors, and justify an application of the doctrine of equitable conversion. "Courts of equity do not incline to interfere to change the quality of the property as the testator or intestate has left it, unless there is some clear act or intention by which he has unequivocally fixed upon it throughout a definite character, either as money or land." *King* v. *King,* 13 R. I., 501. The rule is firmly established that, in order to work a conversion, there must be a clear and explicit direction in the will, the fulfillment of which necessitates the sale. While

that direction need not be an express direction to sell, it must imperatively require something to be done which necessitates the sale. No such requirement exists in this will. Pom. Eq., sec. 1160, *el seq.; 7* Am. & Eng. Ency. Law, p. 465.

*Affirmed.*