BURTON CADY ET AL. *v.* C. L. LINCOLN ET AL.

[57 South. 213.]

1. WILLS.   *Trusts.   Power of sale.   Duration of trust.   Guardian and
      ward duties.   Sale by trustee.   Duty of purchaser.*

A testator by will appointed "B" as "Executor and trustee for
   the purpose hereinafter specified."   By the second paragraph
   of his will the testator devised to B "as trustee" the Eclipse
   Livery Stable to be held in trust, the rents, issues and profits
   of said property to be applied to the support and maintenance
   of the testator's son and grandson, or survivor, in case of the
   death of either, and in the event of the death of both the property
   to return to and become a part of the testator's estate and be
   equally divided between another son and daughter.   By the fifth
   paragraph of his will the testator provided that as to the residue
   of his property, his executor should sell it without order of
   court, as he shall think advisable, and apply the proceeds:
   First, to the payment of testator's debts; second, one-fourth
   of the remainder to the use of testator's son and grandson
   named in paragraph two, "to be held by the said B, as trustee,
   to be invested at his discretion, and applied as directed in
   reference to the Eclipse Stable property in item two; and
   third, the remainder to be equally divided between the other
   son and daughters J. M. C. and A. C., and paid them as they
   become of age.   *Held*, that the testator created a "spendthrift
   trust" as to the property devised in paragraph two of the will,
   but did not create such a trust as to the property mentioned

in paragraph five except as to that part of the proceeds of sale which was for the use of his son and grandson mentioned in the second paragraph of his will.

2. WILLS. *Power of sale. Executor.*

The general rule is that a devise of lands to an executor for sale passes the interest in the lands, but that a devise that lands shall be sold by an executor confers but a naked power.

3. WILLS. *Trust. Duration. Failure to execute.*

Where an executor invested with the power of sale by the will dies having never sold the property nor exercised the trust confided to him, the trust continues, since equity will not permit a trust to fail for want of a trustee.

4. TESTAMENTARY TRUST. *Directions for sale.*

Where a testator in his will after disposing of other property provided that as to the residue, "my will is that my executor shall without any order of the court sell the same as he shall think advisable, and the money arising from such sales he shall apply" by paying testator's debts, applying one-fourth of the remainder to the use of the testator's son and grandson, to be held in trust and to be invested at the trustee's discretion, and applied for their support, and the remainder to be equally divided between other children. *Held*, that the beneficiaries had a right to have this property sold, not only for the purpose of partition, but under the express directions of the will, which was mandatory.

5. GUARDIAN AND WARD. *Duties.*

The guardian of the beneficiary of a spendthrift trust takes the proceeds of the sale of the trust property burdened with the trust, being the trustee's successor as to such proceeds.

6. WILLS. *Sale of property by trustee. Purchaser. Application of proceeds.*

Where property is sold as directed by the provisions of a will it is not the duty of the purchaser to see that the purchase money is applied as directed by the will.

APPEAL from the chancery court of Lowndes county. HON. J. F. McCOOL, Chancellor.

Suit by Burton Cady et al. against C. L. Lincoln et al. From a decree for defendants, complainants appeal. The facts are fully stated in the opinion of the court.

*J. A. Orr,* for appellant.

Where a trust is created the, executor or trustee is charged with carrying it out, and if the trustee dies the court will appoint a new trustee. The trust must be preserved. 18 Cyc. 207-E, and, also, same book 206-D.

Where the terms of the will confer a naked power to sell, and the other provisions evince a design that the land should be sold, at all events, to satisfy the whole intent of the testator, the power survives, especially if coupled with a trust, and other duties. Judge Yerger, who delivered the opinion . in the Bartlett case, cites *Franklin* v. *Osgood,* 15 Johns. 553. In this case, Bell was appointed executor and trustee. He was to sell. James and William Cady were alive, and grown adults. If any power or discretion was to have been vested in them, intentionally, by the testator, it would certainly have appeared in the will. As the will reads it is clear that the trustee was to sell and manage the trust. Neither in the residuary clause, or any other part of the will, is a fee simple estate created in either William or James Cady, and no discretion is vested in either of them.

In support of this contention, see, *Bartless* v. *Southerland,* 24 Miss. 401. Cyc. 18—1080—69. Cyc. 18—1109. A. Digest 1907. 5245. 1907 B.—1138; *McCleland* v. *McCleland.Cyc.,* 1907—B—2234; *Lelz* v. *Lelz.* See same 2235. *Mitchell* v. *Cleosand,* A. Digest. 1908—a—2957. Par. 686 —B—*Russell* v. *Wright.* A Digest, 1908—B—2567. Par. 10—a—Minors Heir 61—Se—968 A. Digest 1908. A— 2508—A—*Bowe* v. *Richmond*—109—S. W. 559—Same *Webster* v. *Pittsburg & T. R. R.,* 84 N. E. 592-a. Digest 1908—B—3908. Power of Disposition *Hamilton* v. *Hamilton,* 115 N. W. 1012, same paragraph 700 as to *Lumpkin* v. *Lumpkin,* 70-a-238 as to power of decrees. Am. Digest 1908—B—3108—*Pasquay* v. *Pasquay,* 85 N. E. 316; *Ready* v. *Hanna,* 46 Miss. 422; *Haskin* v. *Ames,* 78. Miss. 986.

*D. W. Houston,* for appellants.

As stated in the bill in this cause, it seems to have been the clear intention and the dominant idea of the testator in his will to create a "spendthrift trust" in favor of his son, William Cady, and grandson, Burton Cady, with remainder over to cocomplainants, etc.

When we read this will, we find every element or earmark of a spendthrift trust, which, as the authorities say, "is commonly applied to a trust which is created with a view of providing a fund for the maintenance of another, and at the same time securing it against his improvidence, or incapacity, for his protection." 36 Cyc. 805; 26 Am. & Eng. Ency. Law (2nd Ed.), p. 138.

After appointing James B. Bell, trustee, as well as executor, of his will in the very first item of his will, he then proceeds, in item 2, to devise, etc., to said Bell "as trustee" the "Eclipse Livery Stable," etc., to be held in trust "for the following uses and purposes, to-wit, the rents, issues and profits of said property to be applied to the support and maintenance of my son, William Cady, junior, and his son, Burton Cady, or survivor, in the case of the death of either. In the event of the death of both, the said property shall return to and become a part of my estate, and be equally divided between my son James M. Cady and my daughter Mary Adella Cady, in the same manner as the other property hereinafter bequeathed to them."

We take it that it will hardly be seriously denied that this evinces a clear intention on the part of the testator to create a spendthrift trust as to said "Eclipse Stable," etc.

It is expressly directed to be held in trust by a trustee appointed, in whom alone the legal title is vested, and only the rents, issues and profits are to be used and applied (How?) to the "support and maintenance of William Cady and Burton Cady (how long?) during their

joint lives," "or in case of the death of either, to the support and maintenance of the survivor."

This trust was not to cease upon the death of either, but was to continue during the life of both, so when William Cady, died, it continued for the survivor, Burton Cady, during his life. When he dies (and only when he dies to use the language of the will), "said property shall return to and become a part of the testator's estate, and then (and then only) be equally divided between James M. Cady and Mary Adella Cady" (who, however, died before the testator) "in the same manner as the other property hereinafter bequeathed to them."

Surely, it cannot be successfully contended that this does not create a spendthrift trust for William and Burton Cady, and vest the title in said trustee, the rents issues and profits to be used and applied by him to the support and maintenance of said William and Burton Cady as long as either lives, free from alienation, antici-pation, or incumbrance of any kind; and upon the death of both, that the fee should vest in James M. and Mary Adella Cady; and upon the death of James M. Cady, intestate, his interest passed to his heirs, the appellants, Misses Annie Leigh and Fannie Cady and Mrs. Ozie Cady Hogan.

The testator provides as to the residue of his real and personal estate (which includes these squares) that his executor Bell "shall" sell same, without any order of court, as "(that is, in the manner) he shall think advisable and on such terms as he may think best," making it mandatory (and not discretionary) that said executor shall sell same, but leaving the manner and the terms of the sale to his judgment and discretion.

It then provides that with the money arising from said sale and from the collection of debts due testator and all sources, said executor shall, first, pay all debts; second one-fourth of the remainder, he shall (not may) apply to the use of my son William and grandson Burton,.

to be "held" (not to be distributed) by (whom?) "said James B. Bell as trustee" (not by him as executor or by some one else), to be invested at his discretion, and applied as directed in reference to "Eclipse Stable" in item second; third, the remainder to be equally divided between James M. Cady and Mary Adella Cady, and paid to them as they shall respectfully become of age."

So, as to the interest of William and Burton Cady in these squares, the will expressly and explicitly provided that it has to be held and invested by Bell as trustee and applied as in said item 2, and we have already discussed how that was.

This was not to be sold by a commissioner under partition proceedings instituted by the guardian of Burton Cady, and the money paid over to said guardian or Burton to be spent or dissipated, and thus violate or render ineffective the trust declared and the scheme devised ·by the testator in his will, but it was to be held and invested and used for the support and maintenance of William and Burton during ·their joint lives and to the survivor, and at the death of both, it, or the balance, was to go to James M. Cady or his heirs.

As to this interest, item 5, refers to item 2, and makes it a part of it as fully as if copied and embodied in said item 5.

James B. Bell, trustee, died in August, 1885, but no trustee was appointed in his stead to carry out these trusts, as we contend should have been done under the old maxim "that equity never allows a trust to fail for the want of a trustee.

The authorities sustain the proposition that this creates a spendthrift trust, a few of which I shall cite: 26 Am. & Eng. Enc. Law (2nd Ed.), p. 138; 26 Am. & Eng. Ency. Law (2nd Ed.), pp. 141-2; 26 Am. & Eng. Ency. Law (2nd Ed.), p. 143; 28 Am. & Eng. Ency. Law (2nd Ed.), p. 929; 36 Cyc. 805; 51 W. Va. 328, 332; 41 S. E. 405; *Leigh* v. *Harrison,* 69 Miss. 923; *Barnett's Appeal,*

46 Pa. 392, 86 Am. Dec. 502; *Stansel* v. *Hahn*, 96 Miss. 622-3; *Wilson Estate*, 2 Pa. St. 325; 26 Am. & Eng. Ency. Law (2nd Ed.), 144; 28 Am. & Eng. Ency. (2nd Ed.), 953; *West* v. *Robertson*, 67 Miss. 213.

*William Baldwin*, for appellee. ·

I have read with great interest the able and exhaus-. tive briefs of counsel for appellants, and they are unanswerable in the points they make, when applied to cases calling for their application.

But it is submitted that the very foundation of those principles so ably set up are wholly wanting in the case now before this court. The principles set up by my brethren call for a case where there is a trust in the property itself, and all parties dealing with the title to that property must recognize the trust that inheres in the title to the property. We surely have no such case here.

Old man Cady, in item 2, created such a trust in the property itself, in the property devised by it, but surely he never created nor intended to create a trust in this lot, that was part of the residuum, and undisposed of by him entirely, except in the power of sale over it, given to his executor, Bell, to sell if necessary to pay debts. And upon the death of old man Cady, this lot went to his heirs subject to the power of sale of it given his executor, Bell, if necessary to pay debts. It was not necessary to sell it to pay debts, and the executor Bell hence never exercised his discretion and power to sell it, and upon the death of Bell, it went to the heirs-at-law of old man Cady (*Cohea* v. *Jamison*, 68 Miss. 510).

*C. L. Lincoln*, for appellee.

I summarize the contention of appellee as follows:

1st. That as to lot 31 disposed of by the 5th item of the will of William Cady, Sr., unlike the Eclipse Livery Stable disposed of in item 2 of the will, there was no

shadow of a trust. Mary Adella Cady having died before her father, the same became the absolute property of James M. Cady and William Cady, Jr., and on the death of the latter his interest went to his son Burton Cady.

2nd. Such being the case the children of James M. Cady had no interest in or title to said lot and were not entitled to be made parties to said proceedings as to said lot 31, and should not now be heard to assert any claim thereto.

3rd. That Mrs. Short, who, by the pleadings, consents to subordinate her interest, if any, obtained through purchase from James M. Cady, to the asserted interest of the children of said James M. Cady is, as is also Burton Cady, estopped from asserting any claim.

The payment of the purchase money was made by the purchaser, and said money was in fact and in truth distributed and paid in accordance with the final decree rendered by the chancery court in cause No. 736. 3 Pomeroy, Equity Jurisprudence, sec. 1160; 7 Am. & Eng. Ency. Law (2nd Ed.), 465; 9 Cyc. 831, 835; *Montgomery* v. *Milliken,* 5 Sm. and M. 495; *Whitfield* v. *Thompson,* 85 Miss. 760; *Cohea* v. *Jemison,* 68 Miss. 517; 7 Am. and Eng. Ency. Law 275; *Morse* v. *Bank,* 12 L. R. A. 62; *Montgomery* v. *Milliken,* 5 Sm. and M. 495; *Bartlett* v. *Sutherland,* 24 Miss. 395; *Whitfield* v. *Thompson,* 85 Miss. 760.

McLEAN, J., delivered the opinion of the court.

This is a suit brought by Burton Cady and Mrs. Ozzie Cady Hogan, Annie Leigh Cady, and Fannie Cady against the appellees, wherein the complainants allege that they are the owners, and the defendants are in possession, of squares thirty-one and thirty-two in the city of Columbus, Lowndes county, this state, asserting that the title of the defendants to this property is null and void, and asking that the claims of the defendants be canceled as clouds upon the title of complainants and

that the same be removed.   The common source of title
is William Cady, who died in the year 1876.   Mr. Cady
executed the following will:

"In the name of God, Amen.   I, William Cady, of
the city of Columbus, county of Lowndes and state of
Mississippi, being in feeble health but of sound and dis-
posing mind, memory and understanding, do hereby make
this my last will and testament, hereby revoking all for-
mer wills heretofore made, that is to say:

"First.   I nominate, constitute and appoint my friend
James B. Bell as executor of this my last will and testa-
ment and trustee for the purposes hereinafter specified,
and having full confidence in his capacity, prudence and
integrity, it is my will that he shall not be required to
give security for the discharge of his duties as such ex-
ecutor and trustee, unless in the judgment and discre-
tion of the proper court it should at any time become
necessary and proper to require it of him.

"Second. I give, devise and bequeath to the said James
B. Bell, as trustee, that certain property in the city of
Columbus, known as the 'Eclipse Livery Stable' includ-
ing the stables, sheds and lots thereto attached, to be
held in trust for the following uses and purposes, to wit:
The rents, issues and profits of the said property to be
applied to the support and maintenance of my son Wil-
liam Cady, Jr., and his son Burton Cady, or survivor in
case of the death of either.   In the event of the death of
both, the said property shall return to and become a
part of my estate, and be equally divided between my
son James M. Cady and my daughter Mary Adella Cady,
in the same manner as the other property hereinafter
bequeathed to them.

"Third.   I give, devise and bequeath to my son James
M. Cady that certain property in the city of Columbus
known as the 'Horse Mansion,' including the stables,
sheds, and lots thereto attached, to have and to hold dur-
ing the term of his natural life, and to the heirs of his

body, with all the rents, issues and profits of the same, subject, however, that the said James M. Cady, or my executor during his minority, may sell and dispose of so much of said property fronting on Market street as it shall be found profitably disposed of for business houses, the proceeds of such sale, or so much as may be necessary, to be applied to the erection of new stables on the rear portion of said property now occupied by stock sheds and lots.

"Fourth. I give, devise and bequeath to my daughter Mary Adella Cady my residence and the buildings and lots thereto attached, with the household and kitchen furniture thereto belonging, in the city of Columbus, for the remainder of her natural life, with the remainder to the heirs of her body. Provided, however, that my residence shall be occupied as a home for my family, to wit, my children and grandchildren now living, so long as they shall remain together as a family, the necessary supplies and provisions for the family to be chargeable upon the property, devised in items two (2) and three (3), unless my son William and his son Burton should cease to live with the family, in which case it shall be a charge upon the property devised to my son James M. Cady in item third.

"Fifth. As to the residue of real and personal estate, my will is that my executor shall, without any order of the court, sell the same as he shall think advisable, and on such terms as he may think best, and the money arising from such sales and from the collection of debts due me and all other sources, he shall apply as follows: First, he shall pay all my just debts; second, one-fourth of the remainder he shall apply to the use of my son William and his son Burton, to be held by the said James B. Bell as trustee, to be invested at his discretion, and applied as directed in reference to the 'Eclipse Stable' property in item second; third, the remainder to be equally divided between my son James M. Cady and my daughter Mary

Adella Cady, and paid to them as they shall respectively become of age.

"Sixth. My son James M. Cady and my daughter Mary Adella Cady are to have and bear jointly the care and expense of the education and maintenance of my grandchildren, Bobby Cady and Julia Reddick. The said Bobby Cady and Julia Reddick are each to receive the sum of five hundred dollars in cash when they become of age, to be paid jointly by the said James M. and Mary Adella Cady.

"Seventh. In the event of the death of one or more of my said children without issue, the property herein devised to such child shall be equally divided between the surviving children, the share so coming, however, to my son William to be held by said trustee as provided in item second of this will."

The property in controversy is included in the residue of the real estate mentioned and referred to in item fifth of the will. This will was probated in November, 1876. At the date of the death of the testator, he left two children living—his son William Cady, Jr., who was the father of Burton Cady, and the testator's son James M. Cady, who was the father of complainants, Annie Leigh Cady, Fannie Cady, and Mrs. Ozzie Cady Hogan. Mary Adella Cady died, before her father, without issue. William Cady, Jr., died intestate in the year 1882, leaving as his sole heir his son Burton Cady; and James M. Cady died intestate in the year 1898, and left as his sole heirs his daughters Annie Leigh Cady, Fannie Cady, and Mrs. Ozzie Cady Hogan. In September, 1887, Burton Cady, who was at that time a minor, through his guardian and next friend E. P. Richards, and E. P. Richards, guardian of said minor, filed a bill in the chancery court of Lowndes county against Fannie Leigh Cady, who was the wife of James M. Cady, and Annie L. Cady, the daughter of James M. Cady, for the sale of certain property for partition. On the same day the said Burton Cady, who

sued through and by his guardian and next friend, E.
P. Richards, and E. P. Richards, guardian of said Bur-
ton Cady, also exhibited a bill of complaint in said chan-
cery court against James M. Cady for the sale for parti-
tion between Burton Cady and James M. Cady of certain
property therein mentioned. The cause first instituted
was numbered seven hundred and thirty-five, and the
cause later filed was numbered seven hundred and thirty-
six upon the docket of said court. In October, 1887, the
same complainant filed an amended bill in said court,
numbered seven hundred and thirty-six, against James
M. Cady, for the sale for partition between James M.
Cady of certain property therein mentioned, which prop-
erty included said squares thirty-one and thirty-two.
Subsequently said causes, numbered seven hundred and
thirty-five and seven hundred and thirty-six, were con-
solidated and heard and determined together, and one
decree was rendered adjudicating both causes. In Octo-
ber, 1888, a decree was rendered in said causes, wherein
it was ordered that the property therein named, which
included squares thirty-one and thirty-two, should be sold
for partition between the said Burton Cady and James
M. Cady. Under that decree a commissioner was ap-
pointed to sell the property. The property was sold by
the commissioner. The sale was reported to the court
and confirmed. Through that sale the defendants ac-
quired title by mesne conveyances. That portion of the
proceeds of the sale of said squares thirty-one and thir-
ty-two coming to Burton Cady were not paid to him, but
under the orders of the court were paid to E. P. Richards,
the duly and legally appointed and qualified guardian of
said Burton Cady.

Subsequent to the filing of said bills in said causes
numbered seven hundred and thirty-five and seven hun-
dred and thirty-six, Mrs. Julia A. Short became the pur-
chaser at execution sale of the interest of James M. Cady
in said squares thirty-one and thirty-two, issued upon a

judgment rendered against James M. Cady in December, 1887, and prior to the decree confirming the sale of the land sold under an order of the chancery court, Mrs. Julia A. Short filed her petition in said cause, in which petition James M. Cady united, praying that she be permitted to interplead, and that the proceeds of the sale made by the commissioner, so far as the same concerns the interest of James M. Cady, be ordered to be paid to her as the purchaser of his interest in squares thirty-one and thirty-two. In accordance with the final decree entered in said cause, the proceeds of the sale of squares thirty-one and thirty-two, so far as the interest of James M. Cady was concerned, were ordered to be paid by the commissioner to Mrs. Julia A. Short. At the date of the rendition of this decree, James M. Cady was alive and was over the age of twenty-one years, and died in the year 1898.

The only question presented by this record is whether, by virtue of the chancery proceedings, the purchaser at the commissioners' sale acquired a good title to the property embraced in item fifth of the will of William Cady, deceased. It is contended upon the part of the complainants that by item second of said will what is known as a "spendthrift trust" was created in favor of testator's son, William Cady, and grandson, Burton Cady, with remainder over to cocomplainants; and, second, that the same is true of the property devised in item fifth of the will. It may be, and it doubtless is true, that the contention of complainants is correct, and that the testator, as to the property mentioned in item second of the will, did create a "spendthrift trust;" but it is equally certain that such is not the case in so far as it relates to the devise in the fifth item of the will. An examination of these two items, and of the whole will, will clearly demonstrate that the property enumerated in item fifth was never intended by the testator to be bound with the same trust restrictions and conditions

prescribed by the testator as the property enumerated in item second, except that part of the proceeds of sale which was for the use of William and Burton Cady.

It will be noted, in the first place, that James B. Bell was constituted, not only executor, but also trustee. It is true an executor is a trustee, yet it is manifest from the reading of this will that the testator had clearly in his mind a difference between Bell as executor and Bell as trustee. In item second therein named, which is the "Eclipse Livery Stable," the property was devised to Bell as trustee. This is the only provision in the will wherein Bell is named as trustee, except as to the proceeds of sale of the property enumerated in item fifth. All of the other provisions named him as executor. In item fifth the testator does not devise the property to Bell—does not place in him the title, but simply directs him as executor, without any order of the court, to sell this property, if advisable, and on such terms as he shall think best; and the moneys arising from such sales shall be applied as directed in said item fifth, but the part going to William and Burton to be invested as trustee, and applied as directed in reference to the "Eclipse Stable Property."

The general rule is that a devise of lands to an executor for sale passes the interest in the lands, but that a devise that lands shall be sold by an executor confers but a naked power. *Cohea* v. *Jemison,* 68 Miss. 510, 10 South. 46. The second subdivision of item fifth provides that one-fourth of the proceeds of sale, after paying the debts of the testator, he (that is, the executor) shall apply (the proceeds of sale) "to the use of my son William Cady and his son Burton Cady, to be held by said James B. Bell, as trustee, to be invested at his discretion, and applied as directed to the 'Eclipse Stable Property' in item second." It is manifest from this language that so much of the proceeds of sale as were to be used for William Cady and his son, Burton Cady, was to be held by

said Bell as trustee, and was to be invested at his discretion, and applied as directed to the "Eclipse Stable Property," but this related entirely and alone to the proceeds of the sale. This is not at all debatable.

Bell, the executor, never sold the property, never exercised the trust confided to him, and, in view of the proposition that equity will never permit a trust to fail for the want of a trustee, the trust still existed. But his trust was not in the property itself—that is, the land—but in the proceeds of the sale. All of the debts of the testator were paid, and consequently no one was interested in this property except the beneficiaries named in item fifth of the will.

The beneficiaries had a right to have this property sold, not only for the purpose of partition, but under the express directions of the will. The direction as to selling the property was mandatory; it was necessary to sell in order to execute the trust. Bell, having died without making the sale, did not countermand the direction to sell. The parties in interest had the right to demand that the property be sold, and the proceeds be used and applied as directed by the will. James M. Cady and Mary Adella were to receive their portions of the proceeds of sale when they arrived at age. No trust was created as to the proceeds of the sale of this property, which passed under the third subdivision of item fifth, except to pay it to the parties entitled to it. The proceeds of the sale of the property, as specified under the second subdivision of this item of the will, were paid to the guardian of Burton Cady under the order and directions of the chancery court.

The guardian of Burton Cady was the successor of Bell, as trustee, in so far as Burton Cady's interest in the money derived from the sale of the property was concerned. This guardian of Burton Cady took it burdened with the trust. Whether he performed his trust or not is a question entirely foreign to this litigation.

It surely cannot be contended that it was the duty of the purchasers of the property to supervise, or to see that the guardian of Burton Cady used and applied the money as directed by the will. All that could be expected of them was to see that the money was paid to the party who was entitled to it, and this party at that time was the guardian of Burton Cady. The question now before the court is exactly the same as if Bell had sold the property. Had he sold under the will, the purchaser would have acquired a good title. He would not have been required to see that Bell invested the proceeds of sale and dealt with it as the will directed. The chancery court, upon the death of Bell simply carried out the directions of the testator as to the sale, and the money was paid to the proper party, and no further duty devolved upon the purchaser, if, indeed, the purchaser was required to see that the money was paid to Burton's guardian.

The decree of the chancellor in the court below was in accordance with this opinion, and the same is affirmed.

*Affirmed.*