W. R. HENRY ET AL. *v.* T. R. HENDERSON, EXR.

[58 South. 354.]

1. WILLS. *Construction. Perpetuities. Suspension of alienation.*
   *Donee. Lives in being. Trustees. Cross remainders. Code*
   1906, *Sec.* 2765.

   In the construction of wills it is the duty of courts to ascertain
   the intention of the testator and to enforce such intention pro-
   vided it is lawful.

2. SAME.

   Where a will is susceptible of two reasonable constructions, one
   valid and the other invalid, the former construction must
   prevail.

3. PERPETUITIES. *Suspension of alienation. Equitable estate. Donee.*

   The devise of an equitable estate makes the beneficiary a "donee"
   under the statute against perpetuities.

**4. PERPETUITIES.** *Lives in being. Trustees. Code* 1906, *Sec.* 2765.

The life of a trustee under a will will not be taken into consideration in determining whether a devise is void, as within the statute against perpetuities, Code 1906, Sec. 2765, as equity will not allow a trust to fail for want of a trustee; and when a will gave property to a trustee the proceeds of which were to go to the husband of the testatrix for life, the husband was the first taker under the statute.

**5. WILLS.** *Construction as a whole.*

In construing a will, the whole text must be taken into consideration in order to ascertain the meaning of the testatrix so that, where it is apparent that it was the intention of a testatrix to give her nephews a tenancy in common in lands to go to the heirs of "their bodies at their death" and the next preceding section clearly expresses an intention that the survivor shall take the whole of the proceeds of realty, the omission will be deemed to be intentional, and the provision will be construed to pass the fee to the heirs of either of the nephews at his death, rather that at the death of the survivor.

**6. WILLS.** *Construction. Cross remainders.*

A cross remainder can exist only in two ways: First, by express words; or second, by implication.

**7. SAME.**

A will should never be construed so as to create a cross remainder by implication, when in so doing the will is destroyed, because a cross remainder by implication arises only in order to prevent a chasm.

**8. WILLS.** *Construction in favor of the instrument. Lives in being. Perpetuities. Donee. Code* 1906, *Sec.* 2765.

The real meaning of Code of 1906, Sec. 2765, is that there shall be no fees tail, that is, you shall not tie up lands by binding it to the heirs of the body generally or specially but you may give it in succession to persons then living, not exceeding two and the heirs of the body of the survivor.

**9. SAME.**

Where a will devised the remainder of the real estate of the testatrix, to her two nephews, and at their death to go to the heirs "of their bodies," and that the income of said property should be applied to the payment of certain annuities and legacies, and further provided that the entire estate should be kept

intact during the life of the husband of testatrix, and the income should be devoted to his support; in such case as a construction of the will which would pass to a surviving nephew the estate granted the other, would create a succession of three lives before the vesting of the fee, the husband being a "donee" within the statute against perpetuities, the fee will be held to pass to the heirs of a nephew upon his death, rather than upon the death of the surviving nephew.

APPEAL from the chancery court of Leflore county.

HON. M. E. DENTON, Chancellor.

Suit by T. R. Henderson, executor, and others against W. R. Henry and others to construe a will. From a judgment construing the will, defendants appeal.

The facts are fully stated in the opinion of the court.

*Green & Green, F. A. Montgomery, Watson & Perkins, Clarkson & Duls,* for appellants.

*Gardner & Whittington, Pollard & Hammer, Mayes & Longstreet,* for appellees.

No brief of counsel for either side found in the record.

McLEAN, J., delivered the opinion of the court.

Mrs. L. H. Henry, a resident and citizen of Leflore county, in this state, departed this life in January, 1898. She died without leaving any child or descendants of such child. Her husband, Dr. J. P. Henry, survived her and died in May, 1898. She had at the date of her death two grandnephews, Joseph Ditto Craig and Loraine Craig. Joseph Ditto Craig died January 4, 1901, unmarried and without issue. At the date of the death of the testatrix, Joseph Ditto Craig was twelve years old, and Loraine Craig nine years old. At the date of the death of Joseph Ditto Craig he left as his only heirs his brothers, Loraine Craig and one Raymond Craig. Loraine Craig became of age on the 26th day of November, 1909, and this petition was filed by the executor of the last will and testament of Mrs. Henry for the pur-

pose of having Mrs. Henry's will construed, so that he
might be advised as to what settlement to make with the
beneficiaries under the will.

On the 1st day of July, 1897, Mrs. L. H. Henry pub-
lished and declared her last will and testament; on the
4th day of January, 1898, she also declared and pub-
lished a codicil; and again, on the 20th day of January,
1898, she prepared and published a second codicil to said
will. The testatrix made several bequests to various
parties, and the only portions of her will and codicils
which are necessary to be considered are the following
provisions:

"(a) It is my will that the proceeds of the sale of
said real estate in the town of Greenwood shall be loaned
out or invested as the said executor shall think best, and
the income alone to be given to Joseph Ditto Craig and
his brother Loraine Craig until they both become of age,
and on the maturity of the said Loraine Craig the corpus
of the proceeds of the sale of said real estate shall be
equally divided between both of said brothers; should
either die before maturity, then the survivor to inherit
the whole on coming of age.

"(b) The remainder of all of my real estate I give
and bequeath to Joseph Ditto Craig and his brother Lo-
raine Craig for and during their natural lives, and at
their death to go to the heirs of their bodies, with this
proviso: That the income from said property first be
applied to the payment of the legacies hereinafter named,
and after said legacies are paid then said income shall
also be charged with the payment of the annuities also
hereinafter named, and after payment annually of said
annuities, then the remainder of said income shall be
paid to said brothers by said executor.

"(c) It is my further will that my said executor
shall take and keep exclusive charge of all of said real
estate not disposed of as aforesaid, or to be disposed of,
until said Loraine Craig shall become of age, and on

the maturity of the said Loraine Craig, who is the younger of said two brothers, then said real estate not disposed of as herein provided shall be turned over to them, together with all personal property on said land for their natural lives as aforesaid, together with all moneys on hand belonging to them as hereinmentioned

"(d)   It is my further will that my executor shall employ some competent man to manage and control said plantation until said Loraine Craig shall become of age, if in the opinion of said executor it shall be to the best interest of said estate to do so.   Said executor to exercise his best judgment for the interest of said estate in the management of said property.

"(e)   Should my husband outlive me, then it is my will that my property shall be kept intact during his natural life; that is, the income from the same for his support and maintenance."

The above are the provisions of the will executed the 1st day of July, 1897.   On the 1st day of January, 1898, she executed a codicil containing this provision:

"It is my further will that in the event of the failure of issue by the said Ditto and Loraine Craig, that on their death all property bequeathed to them shall go to the nephews and nieces of my husband, J. P. Henry."

On the 20th day of January, 1898, a second codicil was made, wherein the following provisions were inserted:

"It is my further will that the bequest made by me to Mrs. D. W. Henry and her six children of certain lands in Leflore county, as shown by said codicil made January 14, 1898, shall not take effect until after the death of my husband and until after all legacies are paid; that is to say, the property bequeathed to her as aforesaid and her children shall be used, controlled and managed by my executor until after the death of my husband, and until after legacies are paid; and the income from said property shall be used exclusively for the benefit of my husband, and at his death said income shall be

used as aforesaid with my other property for the payment of legacies unpaid. After his death and after all legacies are paid, then they are to own said property as hereinbefore provided.

"It is my further will that my executor shall at my death take charge of all of my property as hereinbefore provided, and that he shall give to my husband my entire income from said property for and during his entire life, subject, however, to this provision, that is to say, that Mrs. D. W. Henry shall receive during the life of my said husband the sum of three hundred dollars per year, which sum shall be deducted from the income from said property.

"It is my further will that no annuity hereinbefore provided for shall be due and payable until after the death of my husband, and until after all legacies herein provided for are paid in full except that to Mrs. D. W. Henry.

"It is my request that my husband have paid during his life the legacies hereinbefore provided for from the income from said property, should there not be enough money on hand at my death, together with the proceeds of the sale of said personal property and over and above the necessary expenses of making and gathering said crop, with which to pay said legacies."

The statutes of this state bearing upon the question presented by this record are Sec. 2436 of the Code of 1892, which is as follows:

"Estates in fee tail are prohibited; and every estate which, but for this statute, would become an estate in fee tail, shall be an estate in fee simple; but any person may make a conveyance or a devise of lands to a succession of donees then living not exceeding two, and to the heirs of the body of the remainderman, and, in default thereof, to the rights heirs of the donor, in fee simple."

Section 2441: "All conveyances or devises of lands made to two or more persons, or to a husband and wife,

shall be construed to create estates in common, and not in joint tenancy or entirety, unless it manifestly appear, from the tenor of the instrument, that it was intended to create an estate in joint-tenancy, or entirety with the right of survivorship; but this provision shall not apply to mortgages or devises, or conveyances made in trust."

The only office that the court can perform is to ascertain the intention of the testatrix and then to enforce the intention, provided that intention is unlawful. It is the duty of the court to so construe the will, if possible, as to make the instrument valid. If the will is susceptible of two reasonable constructions, one valid and the other invalid, the former construction must prevail. Examining the will and codicils from their four corners, interpreting them from the point where the view is obtainable to all and each of their parts, the conclusion is irresistible and inescapable: First. That the testatrix intended that the income from the property in controversy should go to her husband during his life. This is the dominant and controlling purpose, clearly manifested, not only from the will, but also from the codicils. Whenever she undertakes to deal with this property, whether in the will or in the codicils, the language unmistakably manifests the purpose that her husband, if he survive her, shall have the income from this estate. Second. That after the death of her husband her two nephews, Joseph Ditto Craig and Loraine Craig, were to have this property for and during the term of their natural lives, and at their death to the heirs of their bodies. Third. The nephews and nieces of the testatrix's husband were to have no interest in this property, except upon the failure of issue upon the part of Joseph Ditto and Loraine Craig. These several purposes are so plain that no one can question them.

Under paragraph above marked (a) of the will, the proceeds of the sale of the real estate in Greenwood were to be loaned by the executor, ad the income alone

to be given to Ditto and Loraine Craig until they both became of age, and upon maturity of Loraine (he being the younger) the corpus of the proceeds of the sale to be equally divided between said brothers; should either die before maturity, then the survivor to inherit the whole on coming of age. There is nothing obscure about this, and it is manifest that the testatrix intended that the survivor, when he reached majority, was to have all of the property mentioned in this item, absolutely.

The property enumerated in item (b) above named— that is, the remainder of the real estate—how and to whom does it go? That is the single question in this case. The statute is plain and unequivocal that an estate in common is created, unless it manifestly appears from the tenor of the instrument that it was intended to create an estate in joint tenancy or entirety, with the right of survivorship. There is nothing in the language used by the testatrix from which it can be deduced that such was her purpose. The only expressions in the will in that direction are that: "at their death to go to the heirs of their bodies," and "for and during their natural lives." It was impossible for them to have heirs of their bodies—that is, of their joint bodies—as both were brothers. The expression "their bodies" must mean heirs of their respective bodies. The estate was devised to "their heirs," respectively; i. e., the heirs of the body of Ditto to have his estate in fee simple, and the heirs of Loraine to take his estate in fee simple.

In *Hawkins* v. *Hawkins*, 72 Miss. 749, 18 South. 479, this court in the clearest terms construed a provision like the one under consideration to vest in the parties an estate in common. The conveyance under consideration in that case read as follows: "We give to them, our said nieces [naming them], said lot as described, with all appurtenances, etc., arising from the same during their natural lives, and at their death to the descendants of their bodies in fee." This court, quoting Sec.

2441, Code 1892, says: "We concur also in the conclusion that it does not sufficiently appear by the deed that the grantor intended to preserve the right of survivorship, to withdraw the conveyance from the operation of the statute." But, in addition to this, it is manifest that the right of survivorship was not given, when reference is made to the provision in the will marked above item (a). There it is specifically stated that "the survivor of the two brothers was to inherit the whole." This indisputably shows that this identical proposition was then in the mind of the testatrix. Her mind then dwelt upon it, and by apt words she manifested her intention that the survivor should take the whole; and then, in and by the next sentence—we may say in the same breath—before the idea passed from her mind, she makes provision for "the remainder of all of her real estate," and fails, as if purposely, to manifest that the survivor should take the estate of his brother. The conclusion, therefore, is clear that the intention was that a different devolution was to apply as to the property enumerated in item (b), from that named in item (a).

If we correctly interpret *Hawkins* v. *Hawkins, supra,* it holds this, and nothing more: First, the life tenants took as tenants in common, and the estate of the life tenant did not pass to her survivor; second, that each life tenant took for the life of the longest liver—that upon the death of the life tenant dying first, her interest or estate did not pass to her survivor, but descended to her heirs at law, not in fee simple, but until the death of the life tenant dying last, when the ultimate fee passed under the conveyance. The two-donee statute did not pass in review before the court. It was not involved in that controversy. The court simply construed that deed. It did not decide whether any of the limitations were too remote. Gray on Perpetuities, section 629, says: "The rule against perpetuities is not a rule of construction, but a peremptory command of law. It is not,

like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention; therefore every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied.'' In this connection we desire to say that, though an ulterior limitation of the estate devised is void, the whole provision, on that account, will not be declared void; but, upon the other hand, that portion of the will will be sustained in so far as it does not offend against the principle of perpetuities.

The rule at common law required that the limitation should come to an end and the ultimate fee should vest within twenty-one years and ten months after the death of the last survivor of any number of successive donees or devisees, who were in being at the time the devise took effect. Under the statutes in force in this state prior to the Code of 1857, estates tail were converted into estates in fee simple, and it was permissible for a conveyance or devise of lands to be made to a succession of donees then living. The number was unlimited, the only restriction being ''then living.'' The change made in the statute in 1857, which continues to this date, is ''to a succession of donees then living, not exceeding two.''

The statute (Code 1857) was designed to prohibit estates from being tied up for an indefinite period of time. It was to facilitate the alienation of land, to throw it back into the track and channel of commerce, and to prevent the building up of a landed aristocracy, as existed in England; in other words, the purpose of the legislature, as expressed in this statute, was to place a time limit as to when the ultimate fee was to vest, this limit to be measured, not by any certain number of years, but by a definite number of lives of donees then in being, not exceeding two. As the court held in *Banking Company* v. *Field*, 84 Miss. 662, 37 South. 145, referring

to *Cannon* v. *Barry,* 59 Miss. 289, and *Jordan* v. *Roach,* 32 Miss. 620: "That the lives of the two donees in being were the measure of time within which the ultimate fee must vest."

The question therefore arises: Did the devise to the succession of donees then living exceed two? In order to answer this, we must determine whether the husband, Dr. Henry, was a donee. It is manifest, from the reading of the will and the codicils, as hereinbefore stated, that the chief concern of the testatrix was to provide for her husband; in fact, he was to have the entire income, except the sum of three hundred dollars per year to be paid to Mrs. D. W. Henry.

The general and almost universal rule is that the devise of an equitable estate makes the party a donee. In other words, the donation need not be of the legal estate. There are authorities to the effect, which meet with our concurrence, that benefits can be conferred and bequests may be made, and that a mere usufructuary use can be given without conveying an estate. This is to be determined by the construction of each particular instrument. As tersely said: "No will has its brother." It would be doing violence to the language used by the testatrix in the instant case to conclude that it was not the purpose to make her husband a donee for life of the property. So long as he lived he was to remain the beneficiary.

True, the legal estate did not vest in Dr. Henry, but was conveyed to the trustee; but the life of the trustee cannot be taken into consideration, as equity never allows a trust to fail for want of a trustee. *Cady* v. *Lincoln,* 57 South. 213. Should the executor or trustee die, his place would be filled as often as it may be necessary for the execution of the trust. The persons to be numbered as donees are those who take the profits arising from the estate. We therefore must conclude that Dr. Henry, the husband of the testatrix, was a donee. He

was the first taker. After his death the property was
to go to Ditto and Loraine Craig as tenants in common
for their lives, and at their death to the heirs of their
bodies. If the will and codicils be construed to mean
that there was first carved out a life estate for Dr. Hen-
ry, and, second, a life estate for Ditto Craig, and that the
estate of Ditto Craig was not to vest in fee simple until
after the death of his brother, Loraine Craig, there
would be a suspension of the vesting of the ultimate fee
for the lives of three persons (all of whom are successive
donees) then in being at the date when the will took ef-
fect. This is in contravention of the express terms of
the statute. If, upon the death of Ditto, he had left heirs
of his body (children), and if Ditto's interest in this land
had devolved upon or passed to Loraine for his (Lo-
raine's) life, the curious result would be that, if Lo-
raine outlived the children of Ditto, then the children of
Ditto would not enjoy this estate. They would simply
be the medium through whom the estate would pass. We
cannot be persuaded that such was the intent of the tes-
tatrix.

It is ably presented that the expressions "at their
death to go to the heirs of their bodies" and "for and
during their natural lives" mean that the vesting of the
ultimate fee does not happen until the death of both the
life tenants, Ditto and Loraine; that each of the life ten-
ants take, not only for his own life, but also for the life
of the survivor; and that upon the death of either a
cross-remainder by implication arises in favor of the
survivor. This argument as to a cross-remainder is
made in order that the estate may reside in some one,
until the remainderman can be let in to enjoy the estate,
and this cross-remainder must exist in order to prevent
a chasm.

We do not consider the words "their death" to mean
the death of both. It frequently occurs that "their"
means "his" or "her," and vice versa. The whole text

of the instrument must be taken into consideration, in order to ascertain the meaning of its maker. When we construe, as we do, that the will made the two, Ditto and Loraine, tenants in common, there should be something more in the will than a mere implication that "at their death," means at the death of the survivor; and when we look back at the clause marked (a) in this opinion, wherein it is provided that the survivor takes the whole as to the proceeds of the sale of the realty, it must be presumed that an equally clear intention would be manifested if the testatrix intended that if, upon the death of either, the survivor was to hold the estate of his deceased brother until his (the survivor's) death. No such intention is justified from the language used.

A case almost identical with the instant case is the well-considered one of *Gindrat et al.* v. *Western Railway of Alabama,* 96 Ala. 162, 11 South. 372, 19 L. R. A. 839. The deed in that case conveys the property to a trustee, and provides as follows: "For the sole and separate use, benefit, and behoof of Sara E. Gindrat during the term of her natural life, and at her death said premises shall still be held in trust for her three children, to wit, Abraham Gindrat, Mary Elizabeth Winter, and William B. Gindrat, for and during the term. of their natural lives, and at their death the same shall vest in the heirs at law, or children of them, the said Abraham, Mary Elizabeth, and William B., that may be living at the time of their deaths." In construing this deed the court says: "It is entirely safe to say, however, that Abraham Gindrat, William B. Gindrat, and Mary Elizabeth Winter took vested remainders for life, subject to divesture by the execution of the power of sale by the trustee." And, further: "It may not be very clear upon the face of the paper, looking alone to the words of limitation over, whether the purpose was to have the remainder take effect in possession only after the deaths of all the second life tenants, or to have the children of each take

a vested estate in possession in a one-third undivided
interest upon the death of their ancestor. It would
seem, however, to follow, from the several character of
the precedent life tenants, that the latter is the more
reasonable, if not necessary, conclusion; and it is rein-
forced by the consideration that the manifest purpose
of the deed was to provide for the support of Mrs. Sara
E. Gindrat, then of three of her children for life, and
finally of her grandchildren—a purpose which could
best be subserved, if, indeed, it could be sub-
served at all otherwise, by vesting the estate in
the gradchildren immediately upon the death of their
respective parents, who, it is to be supposed, would be
theretofore supported by the ancestor out of the usufruct
of one-third of the property for life. It may readily be
conceived that the children of Abraham, for instance,
who died in 1884, would not enjoy the benefits intended
to be conferred upon them by the conveyance; that the
intention of the grantor as to them would not be effectu-
ated, if it should be held that they are denied all partic-
ipation in the property from the death of their father
until the death of Mrs. Winter, who still survives; and
we therefore feel that we are conserving the real intent
and purpose of the grantor, as well as effectuating the
necessary results of the several character of the owner-
ship of the second life tenants, in holding that, upon the
death of each one of the life tenants, their children,
respectively, became entitled to the absolute fee, and
with the fee, of course, the possession of a one-third
undivided interest in the property.'' This reasoning
meets with our concurrence. We cannot believe, from
the language used by the testatrix, that her purpose was
to postpone the enjoyment by the heirs of the body of
either Ditto or Loraine until the termination of the lives
of both Ditto and Loraine, but rather, upon the death of
either, the heirs of him so dying were to be let in to the
enjoyment of their deceased ancestor's estate.

As to the argument of appellees relative to the cross-remainder: A cross-remainder can exist only in two ways: First, by express words; or, second, by implication. A will should never be construed so as to create a cross-remainder by implication, when in so doing the will is destroyed; because a cross-remainder by implication arises only in order to prevent a chasm. In other words, a cross-remainder by mere implication will never arise, when in so doing the will of the testator is thereby destroyed or rendered invalid, and intestacy thereby created. If, upon the death of Ditto, a cross-remainder is implied, so that Ditto's life estate passed to, or is held by, Loraine until his (Loraine's) death, as is argued by appellee, then there would be held in suspension, before the ultimate fee could vest, three estates: First, Dr. Henry's life estate; second, Ditto's life estate; and, third, the estate carved out of Ditto's life estate after his death for the benefit of Loraine, all of whom were living at the date of the execution of the will and at the date when it took effect. So that we have a succession of donees then living, exceeding two. This would offend against the two-donee statute, thereby creating intestacy after the two life estates are carried out; and hence it must follow that there is by implication no cross-remainder. If, upon the other hand, Ditto and Loraine took for the life of the longest liver, then this result would follow: Dr. Henry, for his life, first donee; Ditto, for his life, second donee; third, remainder of Ditto's estate to his heirs, his brothers, Loraine and Raymond, who take for the remainder of Loraine's life, third donees; and then, upon the death of Loraine, the ultimate fee as to the property given to Ditto would vest in the nephews and nieces of Dr. Henry under the codicil, Ditto having no issue of his body. This would create three successive donees before the ultimate fee would vest. This is in the teeth of the statute.

This court, in *Banking Co.* v. *Field,* 84 Miss. 668, 37 South. 145, upon the authority of *Cannon* v. *Barry,* 59

Miss. 289, decided in 1881, before this will was executed, said: "The statute in its real meaning says, 'There shall be no fees tail; i. e., you shall not tie up land by limiting it to the heirs of the body generally or specially, but you may give it in succession to persons then living, not exceeding two, and the heirs of the body of the survivor.'" But if, upon the other hand, the will and the codicils are construed to mean that Ditto and Loraine took in severalty as tenants in common, and that upon the death of either his estate terminates and passes to the heirs of his body, or, if (under the codicils) upon failure of issue the ultimate fee vests in the nephews and nieces of Dr. Henry, we maintain the instrument, and by so doing place upon the will and codicils what seems to be the more reasonable construction.

We therefore uphold the will and codicils, and the result is that upon the death of Ditto, he dying without issue, his undivided one-half interest in this property vested in the nephews and nieces of Dr. Henry.

*Reversed.*

### ADDENDA OPINION.

As the writer of this opinion expects to retire from the bench within a few days, and as a suggestion of error will perhaps be made, in the consideration of which he will not participate, he deems it proper to make this addenda to the former opinion, in order, if possible, to be more explicit. While the original opinion expressed the viws of each and every member of the court, after a full consideration and conference, this addenda is solely the individual views of the writer.

In the original opinion handed down in this case we held, under the will of Mrs. Henry:

First. That Ditto and Loraine Craig took each an undivided one-half interest in the lands for life, and that upon the death of Joseph Ditto Craig his undivided one-half interest would have vested in fee simple in the heirs.

of his body; second, that, since he died without issue, the ultimate fee in his undivided one-half interest in this property went, under the codicil, to the nephews and nieces of Dr. Henry. We did not consider it necessary to enter into any discussion as to the reason why the nephews and nieces of Dr. Henry became invested with the ultimate fee; but it is manifest from the opinion that we did so upon the predicate that they, the nephews and nieces, were the right heirs of the donor, as shown from the record in this case. It is true that if Dr. Henry, the husband of the testatrix, had married after the death of the testatrix and had left children, those children would have been the right heirs of the donor. We construe the word "heirs" to mean such persons as would inherit under our statute. It is to be observed that the instrument provides "in the event of failure of issue on their death." If the words "on their death" had been omitted, the statute (Sec. 2778, Code 1906; Sec. 2448, Code 1892) would have written those words into the instrument. Under said section the words "heirs of the body," or "issue of the body," etc., is held and interpreted as a limitation to take effect when such person shall die, not having such "heir or issue" living at the time of his death. *Banking Co.* v. *Field*, 84 Miss. 646, 37 South. 145.

Second. That under Sec. 2436 of the Code of 1892 (Sec. 2765 of the Code of 1906), wherein the statute says, "In default thereof (that is, in default of the heirs of the remainderman), to the right heirs of the donor in fee simple," it is not necessary that the limitation to the right heirs of the donor must be to them generally; but, upon the other hand, it may be to one or more of them specifically. In *Banking Co.* v. *Field, supra,* it is there specifically said: "In answer to the first proposition, it is to be said" (which first proposition is the one now under consideration) "that in *Busby* v. *Rhodes*, 58 Miss. 240, *Cannon* v. *Barry*, 59 Miss. 299, and *Halsey* v.

*Gee,* 79 Miss. 193, 30 South. 604, this court has expressly held that a limitation over to a specific person, being one of the right heirs of the donor, is valid."

Third. As to the proposition that the words "to the right heirs of the donor in fee simple" mean that the estate is to go to the heirs of the donor by descent and not by puchase. In this case the court also said: "The conclusive reply is that in *Busby* v. *Rhodes,* 58 Miss. 240, *Halsey,* v. *Gee,* 79 Miss. 193, 30 South. 604, and *Cannon* v. *Barry,* 59 Miss. 299, this court has expressly held that the right heirs of the donor took by purchase, and not by descent—as limitees under the terms of the will or deed, and not as heirs."