ROBERT REDMOND ET AL., *v.* DENNIS REDMOND ET AL.

[61 South. 552]

1. WILLS. *Construction.   Life estate.   Perpetuties.   Code 1906, section 2765.*

Where a testator devised to his seven children a life estate in his property and by codicil provided that "at the death of any one or more of my seven children, his or their part of the property, real or personal, shall be equally divided between my surviving children, and after the death of my last child, whether he has children or not, the property must be equally divided among all my living grandchildren." This is not a devise of all ·the property to one child for his life, and at his death to another child and so on successively to the end, and the life of each child is not to be counted in the succession of donees, but only that of the longest liver, and is not violative of Code 1906, section 2765 against perpetuities.

2. SAME.

In such case so long as any of the seven children lived the property belonged to such of them as were living, and when all of his children were dead, the property went to his grandchildren, his right heirs in fee simple.    ·

APPEAL from the chancery court of Holmes county.
HON. JAMES F. MCCOOL, Chancellor.    ⸌

Bill between Dennis Redmond and others and Robert Redmond and others for the construction of the will of John S. Redmond, deceased. From a decree finding the fourth clause of the will invalid and directing a distribution of the residue of the estate among the testator's heirs, Dennis Redmond and others appeal.

The facts are fully stated in the opinion of the court.

*Boothe & Pepper,* for appellants.

Our contention is that the devise is not void as violative of the rule against perpetuities; it is not contrary to the proviso of section 2765, Code 1906; and that the prop-

erty is not devised as contemplated by said section in suc-
cession to more than two living donees; and that said de-
vise is not contrary to the statute and public policy and
that it is not void, because thereof. We contend that it
was the purpose of the testator. to create a joint tenancy
in his seven children for life with the right of survivor-
ship, and that upon the death of the last surviving child
the grandchildren then living should immediately be
seized of a fee simple estate in said property as by an ex-
ecutory devise. And we contend that this express inten-
tion is not contrary to law, but will be sustained by the
court where "it manifestly appears from the tenor of the
instrument that it was intended to create an estate in
joint tenancy with the right of survivorship."

If the testator had devised all the property to Robert
for life, and at his death to Jerry for life, and at his
death to Squire for life, and at his death to Jason for
life, and at his death to Martha Jane for life, and at her
death to Frances for life, and at her death to Elizabeth
for life, and to the heirs of her body and in default thereof
to the right heirs of the donor in fee simple, the devise
would have been contrary to section 2765, Code 1906, and
void as a devise to the ulterior limitees, but we do not be-
lieve that this court would even then hold that Redmond
died intestate.

We are aware of the fact that the law regards estates
in joint tenancy with disfavor, but such estates are recog-
nized by the laws of our state when created by express
terms. See section 2770, Code 1906, which reads as fol-
lows: "All conveyances and devises of land to two or
more persons, or husband and wife, shall be construed to
create estates in common and not in joint tenancy or en-
tirety, unless it manifestly appears from the tenor of the
instrument that it was intended to create an estate in
joint tenancy or entirety with the right of survivor-
ship."

Upon the death of John I. Redmond his four sons and
three daughters became joint tenants of the property de-

vised to them, with a right of survivorship vested in each one of them, and not to them as a succession of donees. This express intention of the testator is as plain as language can make it; and is given in item four of the will and reiterated in the codicil.

The limitations in the will to the seven children as joint tenants and to the survivor of them, and at the death of the last surviving child to the "grandchildren living" in equal parts, do not violate the rule against perpetuities. If we are mistaken as to this the children, the first takers, obtain an absolute estate in fee simple and Redmond did not die intestate. *Caldwell* v. *Willis*, 57 Miss. 555. In this case, GEORGE, C. J., in delivering the opinion of the court on page 569 says of the rule against perpetuities, that it "requires the fee to vest within a life or lives in being at the testator's death, and twenty-one years after the expiration of said life, or twenty-one years after the last surviving life, if more than one be named in the will."

Tested by this rule the devise complained of in Redmond's will does not violate the rule. The devise is to the seven children naming them, and the survivor and, at his or her death, to the grandchildren living.

The fee must necessarily vest within a life or lives in being if any of the children be living upon the death of the testator, and immediately upon the death of the last surviving child, in the grandchildren living; the law might add a period of ten months in order to avoid doubt and uncertainty and still the devise would be in harmony with the rule.

In the case cited, the court also held that the limitations in the will of Augustine Willis, being therein passed upon, was void, because it violates the rule against perpetuities, and that the rule is that the first taker gets as absolute estate. The clause in the will declares void as against perpetuities, gave, "To Daniel Willis during his life, and at his death to his child or children then living

and .the descendants of ·such· child or children and their :
heirs forever." And the court held that Daniel Willis ·
took an absolute estate.

.    The object of the legislature in framing section 1190, .
Code 1880, 2436, Code of 1892, and 2765, Code of 1906, is :
made clear in *Banking Co.* ·v. *Field,* 84 Miss. 666.

WHITFIELD, C. J., delivering the opinion of the court .
says on page 660 in speaking of the erroneous construc-
tion of the statute dedonis by the English courts: "Eng-
lish courts construe according to their customs; Amer- .
ican courts should favor executory devises to carry out .
the intent." And again on page 663, "that the donors
took by purchase and not by descent, as limitees under the ·
deed of will, and not as heirs."

In the concurring opinion of CALHOUN, J., on page 667,
it is said: "No doubt the lawmakers had in mind execu-
tory devises, and, having abolished fees tail, authorized .
the creation of the estate described in the statute to which
this limitation must conform.    Executory   devises   no
doubt furnished the idea of lives in being, but succession
of donees had no place in the law of executory devises . It
seems plain that it could not have been the purpose to in-
.terfere with executory devises, but that, having effect-
ually destroyed fees tail, it was intended to authorize as ·
a substitute therefor, the succession of interests author-
ized by the proviso, so as to enable one to give an estate .
to his wife and children or others in succession, with re-
mainder to the heirs of the body of the last taker."

And on page 668 Judge CALHOUN says: "Should the ·
idea prevail that no future limitation of lands can be
made, except as prescribed by the very words of the pro- ·
viso (meaning 2765, Code of 1906), while personalty is
subject to the former law of executory devises? In *Can-
non* v. *Barry,* 59 Miss. 289, it was announced that the stat- ·
ute was not intended to prescribe a formula to be ad- :
hered to in future limitation. The estate contemplated by ⁻
the proviso is so widely different from executory devises ·

that they could not have been had in view in enacting it except as furnishing the idea of lives in being. The statute prohibited fees tail, and authorized a statutory substitute for them, and left executory devises wholly unaffected.''

Judge TRULY's concurring opinion on the facts is in harmony with the foregoing.

The instant case as already shown does not present to the court a succession of donees; all of the seven children take at once a life estate with full right of survivorship as joint tenants, and on the death of the last taker the absolute fee by executory devise vests in the grandchildren living.

If we are mistaken in classing the devise of Redmond to his grandchildren as expressed in the will as an executory devise, we surely are right in our contention that John I. Redmond by his will made his children joint tenants of the property devised to them, with right of survivorship, and that such joint tenancy when thus manifestly expressed in a written instrument is upheld by our law. Code 1906, section 2770; *McAllister* v. *Plant,* 54 Miss. 106; *Day* v. *Davis,* 64 Miss. 353.

The children of Redmond hold by one joint title and in one right. They have unity of interest, unity of title, unity of time, and unity of succession. 33 Cyc. 484; 47 Am. St. Rep. 253; 48 Miss. 311.

Not until the last life tenant dies will the ulterior limitation take effect and the fee pass to the living grandchildren of the testator.

In *Thomas* v. *Thomas,* 97 Miss. 697, it was held that the statute (section 2765, Code 1906) prohibited estates tail, and authorized a statutory substitute therefor, but left executory devises unaffected, and the opinion of Judge CALHOUN in *Banking Co.* v. *Field,* 84 Miss. 646, 37 So. 139, is cited approvingly, and it was declared that there may be a limitation by executory devise of realty as well as personalty, and that the common law against perpetuities

is the same, whether the estate limited consists of realty or personalty. In the instant case the estate consists of both realty and personalty; and we have already pointed out that the common law rule against perpetuities is not violated.

In conclusion we insist that the will of John I. Redmond ought to be sustained as expressly creating a joint tenancy in his seven children, living when the will was executed, for life, with express right of survivorship, and after death of his last surviving son or daughter to the grandchildren of the testator then living; the grandchildren then living being the ulterior limitees to whom the fee will pass. The devise does not violate the rule against perpetuities, because the fee will vest immediately upon the death of the last life tenant. It does not violate section 2765, Code 1906, in that it is not a devise, contemplated by that statute. That statute is against the entailment of property except for the length of time given by its terms. The will of John I. Redmond does not entail his property or attempt to do so; he gives to his children a life estate with remainder to his grandchildren in fee. He does not devise specific property to a succession of donees more than two, or to any succession of donees, but all of his seven children at his death take at once all of his property described in the will as devised to them as joint tenants with the avowed and declared right of survivorship, as provided by law.

In other words the children take a life estate as joint tenants and at its termination the grandchildren take the fee by executory devise, or by whatever other name it may be called.

*W. L. Dyer,* for appellees.

Under the terms of this will, the real estate devised therein, and every part and parcel thereof, must remain tied up during the lives of the seven children named therein, and beyond the possibility of any final disposition by any devisee, designated or contingent.

This proposition cannot be successfully disputed. The sole .question remaining, then, is, does this disposition offend against our rule against perpetuities?

The Act of 1822, sec. 24, page 609, Howard & Hutch, Code, is in somewhat more elaborate language .than the present Code, or the three preceding ones; it reads as follows: "Every estate in land or slaves, which now is or hereafter shall be created an estate in fee tail, shall be an estate in fee simple; and the .same shall be discharged of the conditions annexed thereto by the common law, restraining alienation before the donee shall have issue, so that the donee, or person in whom the conditional fee is vested, or shall vest, shall have power over the said estates, as if they were absolute fees; provided, that any person may make a conveyance or device of lands to a succession of donees then living, and the heir or heirs of the body of the remainderman, and in default thereof, to the right heirs of the donor in fee simple." This is contained in chapter 42 which is styled "Estates in Realty by Alienation and Conveyance—In Fee Tenancy, Entail, Remainder, and Reversion."

Chapter 36 of the Code of 1857 is the corresponding chapter to this one, and is styled, "An act relating to Real Estate, Alienation and Partition." Article 3, page 307 of this chapter brings forward the provision above with some change. of language, which has been preserved in the succeeding codes, and is now section 2765, Code 1906. This reads as follows: "Estates in fee tail are prohibited; and every estate which shall be created an estate in fee tail shall be an estate in fee simple; provided, that any person may make a conveyance or devise of lands to a succession of donees then living, not exceeding two; and to the heirs of the body of the remainderman; and in default thereof, to the right heirs of the donor in fee simple."

The court will note the distinction in the two sections at a glance; the earlier provision is the common law rule

unchanged; it admits of any number of successive donees, provided they all be living at the date of the conveyance or devise.

The section in the Code of 1857 omits much of the language of the earlier section, and makes a fundamental change in the power of the testator, or donor, or grantor, to control the future disposition of the estates; it limits these successive lives in being to two and no more.

Section 2765, Code 1906, is practically identical with this section.

The will in controversy in this cause upon its face, and in plain terms, makes provision for seven children, then in being, and provides for the contingent succession of one from another until the whole estate vests in the survivor of the seven, and then makes a final disposition of the property.

To the layman the violation of the statute is apparent; as before remarked, the controversy between us is, whether or not, this violates the statute as construed by the courts:

In support of their contention, that the will of John I. Redmond is valid, the learned counsel for the appellants set up in substance three reasons in support of their positions. First, that the will creates a joint tenancy, and is therefore not within the rule; second, that if it offends against the rule, the children named in the will take the whole estate to the exclusion of the ulterior limitees; third, that the provisions in the will constitute an executory devise, and for that reason is not within the rule against perpetuities.

First. The provisions of this will do not create an estate of joint tenancy, either at common law or by our statute. While it has some of the elements of joint tenancy, it is an arbitrary testamentary estate entirely beyond the control of the first holders. Survivorship, while a usual incident of joint tenancy, occasionally was a feature of tenancy in common, according to Mr. Freeman. The dis-

tinguishing feature of joint tenancy at common law, as by
our present statutes, was the fact that the joint estate
could be broken and severed at any time by the act of the
parties jointly, or by the act of either one, and thereby
estates in severalty and in fee simple created. This could
be done in many ways apart from any action by the court,
even by so simple an expedient as the execution of a long
lease by one of the joint tenants.

See Freeman on Cotenancy and Petition (2 Ed.), secs.
29 and 30; or the execution of a mortgage by one of the
contenants. See same authority.

It is unnecessary to quote our state decisions or stat-
utes on the proposition in the light of the position by Mr.
Freeman on this point.

This is not in any sense a joint tenancy, either by stat-
ute or common law, but, as already said, a purely arbi-
trary estate, whose course and continuance is clearly
fixed by the will in controversy, and beyond the control of
either parties or the courts, if this will be held valid.

Of course, it is not contended that there might not be a
temporary partition between these said children, good so
long as they all lived, and only so long as all are living;
but this does not affect the principle that the course and
devolution of this estate is entirely beyond the control of
the parties, or the courts. It is a purely arbitrary, testa-
mentary estate, established and fixed by the will, and
clearly in my opinion against the rule.

Again, counsel say further that the devise to these chil-
dren, named in this will, is not against the rule for the
reason that the whole estate is not devised to each of them
in succession, but only share and share alike. Counsel
clearly are mistaken in this position.

This very difficulty occurred to Judge WHITFIELD in
*Banking Co.* v. *Fields,* 84 Miss. 664. In this case Eldon
Field had executed a deed in trust to his brother, J. H.
Field, Sr., for the benefit of the latter's two children, with
cross, contingent remainders between these two children,

remainder over to J. H. Field, Sr.  One of these children dies and under the terms of the deed his interests vested in his surviving sister; subsequently the sister died.  The question before Judge WHITFIELD was, did the interest of the son who dies first, and whose interest then vested in his sister, at her death vest in the father under the terms of the deed?  Judge WHITFIELD was confronted here with the difficulty interposed by the limitations of only two lives in being; he solved this difficulty by holding that Fields, Sr., took, not under the direct terms of the deed, but under the latter clause of the statute, as the right heir of the donor.

In *Hudson* v. *Gray*, 58 Miss. 393, almost the identical proposition is presented.  In that case, the testator, Gray, devised his estate to his four children share and share alike, and by a codicil provided that in case any of these children died without male descendants, his or her share should survive to his remaining brothers or sisters.  The court held that this provision was obnoxious to article 3, page 307, Code 1857, for the reason "that the estate here limited may be held by each one of the children of the testator (four in number) in succession and the limitation as to the land is therefore void."

Counsel say further, following the *dictum* of Judge CALHOUN in *Banking Co.* v. *Field, supra,* that this limitation in the will is valid for the reason that the will creates an executory devise and is therefore not in the rule.  Without conceding the correctness of this *dictum,*. for in my opinion it is manifestly erroneous, we submit that the provision is in no sense an executory devise.  The distin-- guishing characteristic of an executory devise (which is plainly implied by the term) is that nothing passes or vests immediately under the instrument creating it, but that the estate created by the instrument only arises in the future upon a contingency fixed and determined in the writing.  Blackstone states the rule thus:  "An executory devise of land is such a disposition of them by will,

that thereby no estate vests at the death of the devisor, but only on some future contingency. It differs from a remainder in three very material points. 1. That it needs not any particular estate to support it. 2. That by it a fee simple or other less estate may be limited after a fee simple. 3. That by this means a remainder may be limited of a chattel interest, after a particular estate for life created in the same.''

The provisions of the will in controversy creates a life estate, with the right of survivorship in the seven living children of the testator, with remainder over on the death of the last survivor, to such of testator's grandchildren as may then be living. The legal effect of this provision beyond dispute is to vest the whole estate immediately on the death of the testator in the beneficiaries; in other words, the whole estate is passed and executed, instead of being executory, because a remainder, even though contingent, becomes vested upon the vesting of the particular estate.

The principle is not effected by the fact that the remainder might subsequently be defeated by the failure of the contingency to happen. See Blackstone (Cooleys' 3rd Ed.), Book 2, bottom page 171; also pages 162 to 171 of chapter 2.

Counsel seem to me to have entirely misconstrued the language of Judge CALHOUN in *Banking Co.* v. *Field, supra,* and to have given it a scope and bearing not contemplated by that eminent lawyer.

The question involved in that case was a construction of the deed executed by Eldon Field, which was duly signed, acknowledged and recorded. There was no issue involving, or in any wise touching upon, a will or any testementary disposition of property; the language referring to executory devises in the opinion is merely by way of argument, and is purely *obiter dictum,* and is not binding on the court.

The language employed by Judge CALHOUN does not necessarily, or even naturally, support the position of

counsel, nor conflict in any sense with the decree of the chancellor holding the Redmond will to be void.

On page 668, Judge CALHOUN says in part as follows: "In *Cannon* v. *Barry,* 59 Miss. 289, it was announced that a statute was not intended to prescribe a formula to be adhered to in future limitations. The estate contemplated by the proviso is so widely different from executory devises that they could not have been had in view in enacting it except as furnishing the idea of lives in being. The statute prohibited fees tail and authorized a statutory substitute for them and left executory devises wholly unaffected. The statute in its full meaning says: 'There shall be no fees tail, i. e., you shall not tie up land by limiting it to heirs of the body generally or specially, but you may give it in succession to persons then living not exceeding two and the heirs of the body of the survivor of these two.' "

The original act was to serve the purpose of family settlement, and there were no limitations of the number of successive owners, thus enabling one to limit in succession all his children or other persons. The Code of 1857 cut the number of successive donees down to two and thus defeated to some extent the purpose of the original act. *Cannon* v. *Barry* was decided in 1881 and I do not think it right to disturb the finding of the very able court in that case in a matter so important to property rights.

It is thus clearly held by Judge CALHOUN in above quotation that the testator even now cannot exceed the limitation of two lives fixed in the statute and which is attempted to be evaded in this Redmond will. We further submit respectfully that the *dictum,* as to executory devises not being included in the prohibiton against perpetuities, is against the weight of authority, and our own statute, as specifically held by our own court in former cases in which the issue was directly involved. The restraint upon alienation of land imposed by executory devises was far more obnoxious to the common law rule as

construed by the English courts and our own than were fees tail; the reason usually assigned for it being that an entail was easily broken and consequently imposed no great restriction on the disposition of real estate, while on the contrary an executory devise could not be broken even by the court nor the actual parties, for it was protected by the courts of equity.

This is set forth as being the law by Blackstone, page 173, sec. 3, vol. 2 (Cooley's 3rd Ed.). Mr. Fearne states the rule in part thus: "The reason why some kind of limit is prescribed for the vesting of such executory interests is, that executory interests (other than those which are in remainder after or engrafted upon an estate tail, and which were capable of being destroyed by the tenant in tail, by means of a recovery) cannot be destroyed by the prior devisee or legatee; and they therefore tend to a perpetuity, by being unalienable until the contingency happens on which they are to vest in right, which is inconsistent with the welfare of the state, and therefore contrary to the policy of the law." Fearne on Remainders, chapter 4, sec. 707, 30 Cyc. 1479, par. 4: "Springing and shifting uses and executory devises are beyond question subject to the rule." See also note 71 to this page.

In *Jordan* v. *Roach,* 3 George, 483, the court says in part, referring to the section 24 of the Act of 1822 as follows:

"The object of the statute was, by converting estates tail into estates in fee simple, to withdraw restraint on alienation, and to restrict the power which most persons are prone to exercise, to direct the descent and provide for the enjoyment of their estate after they have ceased to exist. Apart from the proviso, the power to control the disposition of his property, and to restrict the right of alienation, is bound by the time when the owner shall cease to live, or at which he has parted with his estate; but the legislature wisely thought that the right of aliena-

tion might consistently with sound policy be suspended for a limited period of time after a person has either by deed or devise divested himself of his estate and has accordingly fixed that limit to a life, or lives, in being, giving to the donor or devisor the power to limit the ultimate fee to the heirs of the body of the remainderman, and in default thereof to his own right heirs. Within this limit, the partial interest or particular estates given to the successive donees, may be, without doubt, created by deed, or limited by executory devise. It may with certainty be affirmed that there is nothing in the proviso, or upon the face of the statute, or within its equity, nor any consideration arising within the policy indicated by the law, from which the authority can be inferred to limit an estate upon a contingency, which is not to happen within the compass of the time prescribed by the proviso to the 24th section of the statute. When we assert the want of power, we decide upon the invalidity of the grant or devise, and if we test the validity of the limitation in question by the provisions of the statute, it is seen clearly that it is not only unwarranted by it, but repugnant to the obvious policy of the law. This court has recognized the validity of executory devises, in respect to both personal and real estate, in *Carroll* v. *Reinch,* 7 S. & M. 798, *Kirby* v. *Calhoun,* 8 S. & M. 462; and in *Lambden* v. *Rucker,* 12 S. & M. 230; but in neither of these cases was it held that broader limits were allowed for executory devises than the boundaries fixed by the proviso to the 24th section." (This is quoted from the syllabus.) In *Caldwell* v. *Willis,* 57 Miss. 573, Mr. Chief Justice GEORGE says in part as follows:

"Except when the limitation is by way of contingent remainder, which may be cut off by the alienation of the particular tenant (which liability to be defeated in this way is the reason for the exception), a limitation of an estate in realty or personalty will be void, if by the terms of the instrument creating it the fee may not vest within

a life or lives in being at the death of the testator and twenty-one years and the usual period of gestation thereafter. This rule applies as well to executory devises, when an estate in fee is given, and a limitation over, devised to another upon the happening of some contingency which will have effect to cut short the estate devised to the first taker, and at the same time to vest it in an ulterior limitee; as also to provision like the present, where an attempt is made to tie up the inheritance or absolute interest in a direct bequest, and for a longer period than allowed by the above mentioned rule." This seems to me a clear determination that executory devises are included in our present statute.

The main reliance of the learned counsel for appellants in this controversy seems to be placed upon *Caldwell* v. *Willis,* 57 Miss. 565. This, in my opinion, gives no support to any position they have set up. The holding of the court was limited exclusively to a bequest of personal property (see page 575). The court further held that even this bequest as to personalty was obnoxious to the rule for the reason that the ulterior limitees, the class to finally take the property, was too remote and uncertain. The devise was to the unborn children of the unborn children of Daniel Willis (see page 574).

In the Redmond will the ulterior limitees are neither uncertain nor remote; they are the living grandchildren of John I. Redmond, the testator; and this means either those grandchildren living at his death, or living at the death of the last survivor of the seven, as the courts might construe this provision. In either event an easily determined class. The voice, in this will, we insist, is the effort to tie up the real estate for seven lives instead of two.

Counsel further insist that in any event, and in any view of the will of John I. Redmond, that the seven children named in the will take a fee simple in the land. This construction does manifest violence to the plain inten-

. tions of the testator.   His plain purpose is to give them
. a life estate and no more.   To overcome this plain inten-
tion and purpose of the testator and give these named
children a fee simple estate in the land, the purpose must
be plainly found in the law.   This occurs in the law in but
two instances—first, where the testator or donor attempts
to create an estate in fee tail; second, where the ulterior
limitation is too remote.   Neither instance can be claimed
under this will of John I. Redmond; there is no purpose,
. expressed or implied, to create an estate in fee tail and
the ulterior limitation is neither remote nor uncertain.
. The court will never, under these circumstances, create an
estate in fee simple in first takers.

The contention of learned counsel to sustain the pro-
. visions of the will of John I. Redmond is based, in sub-
stance, upon the conception that as to the number of lives
in being there is a different rule by will to that resulting,
. from a conveyance *inter vivos*.

To give such a construction to our rule against per-
petuities, as contained in our statute from 1822 to the
present time, is to give a construction to this statute at
variance with its plain terms.   The words, "conveyance
or devise" as used in these statutes applying to land cer-
tainly comprehend all methods of transfer or disposition
of land *inter vivos* or by testament; further, being a dec-
laration of long-established, public policy, it should be
given the broadest construction possible to effect its de-
clared purposes.   In none of the earlier decisions dealing
with this subject, so far as I can ascertain, is any other
construction hinted at, than the uniform rule as to both
wills and conveyances.   In *Jordan* v. *Roach,* 3 George,
483, this uniform construction is plainly and unequivo-
cally declared.

An examination of chapter 42, which is the Act of 1822,
· H. & H. Code, and the corresponding chapter 36, Code of
. 1857, shows both to be comprehensive plans relative to
· titles and estates in lands.   The act of 1822, especially is

remarkable for the changes introduced by it at this early
date in the titles by which land could be held, and the
many variations which it introduced in the rules and
definitions of the common law on this subject. It would
hardly be probable that in recasting the common law rule,
relating to land and estates therein, that the lawyers of
that day would have overlooked so annoying and mystify-
ing a subject as executory devises; that they could have
used the language and terms describing that estate, and
been ignorant of its meaning. That they should have
been careful to abolish the particular estate necessary to
preserve a remainder, when the disposition of the estate
was by deed, and have overlooked this executory devise
where no particular estate was required. The only au-
thority for the petition of counsel is the *dictum* in *Bank-
ing Co.* v. *Field,* 84 Miss. 664, as followed in *Thomas* v.
*Thomas,* 97 Miss. 714.

*Cannon* v. *Barry,* 59 Miss. 298, certainly lends no sup-
port to this view. The question in that case was the con-
struction of the deed of R. Cannon, executed in 1845. It
is an almost parallel case to that of *Banking Co.* v. *Field,*
*supra.* Reserving to himself and wife a life estate in the
property, he conveyed to three trustees, and the survivor,
for the use of his son, R. L. Cannon, for life, remainder
over to his children, who attained the age of twenty-one
or married. This conveyance was made under the act of
1822. The court held that this conveyance was a valid
one under that act, and that in fact it was good under the
act of 1857, both of the sons being alive at the date of the
deed, and consequently there being only two lives in being
at that time. The court says in part in discussing this
rule on page 302 that the proviso to the statute was not
intended to lay down a formula for conveyancing.

It says further on same page: ''The object of this stat-
ute is to establish a limit beyond which the grantor cannot
go, but within which he may exercise unbounded discre-
tion, so that he may limit the remainder to the first born

or the last born, or to the married or single, or to the adult, or minor heirs of the life tenant, taking care always that the fee shall vest within the period prescribed by the rule against perpetuities.''

If, under the statute of 1822, as construed in this case, the grantor or devisor was absolutely bound by the limitations of the proviso to a succession of lives then in being, is not the present limitation of two lives in being equally obligatory and binding? In *Thomas* v. *Thomas,* 97 Miss. 714 the court says this: ''There may be a limitation by way of executory devise of realty as well as personalty, and the common law rule against perpetuities is the same, whether the estate limited consists of realty or personalty.'' This is undoubtedly a correct statement as to the common law rule. Now this common law rule was that the estate must vest within a life or lives in being and twenty-one years and ten months thereafter; this is the exact rule contained in the act of 1822; this limitation was subsequently reduced to two lives in being by the Code of 1857 and the subsequent codes. Is it not at least highly improbable that by the use of this language the various legislatures intended no reference to executory devises, one of the most offensive forms of restraint on the alienation of lands?

The decision in *Thomas* v. *Thomas, supra,* is easily supported upon other and well-recognized grounds, without resort to the *dictum* in *Banking Co.* v. *Field, supra.* The testatrix in the Thomas case devised in trust for the benefit of her three living sons with remainders to their children. One of these sons died without any children, before the death of his mother, thus leaving only two sons in existence at her death when the will became effective. A will takes effect only on the death of the testator and under the conditions existing at his death. ''The validity of future interests created by will is determined by the situation existing at the testator's death. The rule does not require that future interests created by

the terms of a will should have been good if the testator had died immediately after the execution of the will; it is enough, if taking the facts as they exist at the testators death, the future interests must vest within the limits." 30 Cyc. 1485, par. F. There being only two sons in existence at the testator's death this devise was good within the strictest construction of our existing rule.

This section of the act of 1822 with the proviso thereto, as brought forward in the Code of 1857 and the subsequent codes, being section 2765, Code, 1906, has always been recognized as the rule against perpetuities in this state. The earlier decisions on this subject concede the fact, and in *Cannon* v. *Barry*, 59 Miss. 302, it is plainly so declared. Outside authorities recognize this statute as constituting our rule on the subject. See 30 Cyc. 1523, note 16.

If the court will pardon me, I would like to refer them to the article, "Limitation of Estates," by General George in his digest in which this whole subject is exhaustively discussed.

A conveyance or devise, which offends against the statute or rule against perpetuities is undoubtedly void. This is true in equity as well as in law. "When a trust is unlawful because it is one which the statute forbids, or which conflicts with the statute concerning perpetuities, and the like, the whole disposition is void." 2 Pomeroy's Equity (2 Ed.), close of sec. 987.

We respectfully submit that the decree of the chancellor, holding the will of John I. Redmond void, as respects the land named in his will, is correct and should be affirmed.

REED, J., delivered the opinion of the court.

The appeal in this case is for the purpose of obtaining a construction of a will. John S. Redmond died February 6, 1910, leaving a last will and testament in which he disposed of certain real and personal property. The will,

with codicil thereto, was probated in common form before the chancery clerk. At the ensuing term of the chancery court some of the grandchildren of testator, the children of his deceased children contested the will. It is shown in the final decree that the will was properly executed, that Mr. Redmond had full testamentary capacity, and that it was agreed by all parties that the chancellor should hear and decide the case as if a bill for construction had been filed and a general demurrer had been interposed thereto.

The following is the part of the will presented for our construction: ''Fourth: I devise and bequeath to my four sons, Robt., Jerry, Squire and Jason Redmond, and my three daughters, Martha Jane Redmond, Frances Binford and Elizabeth Sanford, during their lives, equal shares in the following real and personal estate: The plantation now occupied and resided upon by me, less that portion otherwise disposed of in this will, all of my farming implements, stock and other personal property not otherwise disposed of, and in the event of the death of Robert, or either one of my seven children named herein, then the property devised to him shall go to my remaining children to be equally divided between them, it being my desire and intention that my property shall pass over to my living children, and after the death of my last child, then the property devised shall go to his children, and if he or she has no children then the property is to be equally divided among my grandchildren living.''

The part of the codicil which qualifies the foregoing item of the will is as follows: ''And at the death of any one or more of my seven children, his or their part of the property, real and personal, shall be equally divided between my surviving children, and after the death of my last child, whether he has children or not, the property must be equally divided among all my living grandchildren, and it is my desire that this codicil be annexed to and made a part of my last will and testament as aforesaid, to all intents and purposes.''

Mr. Redmond gave the property he mentions to his seven children for their lives. When all of them shall die—that is, when the last survivor dies—it goes to all of his living grandchildren in equal parts. Each of his seven children received a life estate as soon as he died. He did not intend that any of his grandchildren should receive any part of the property so long as any of his seven children were living. He intended that the property should remain in the possession of and enjoyment of his children named and of the survivors of them till the last died, and he therefore provided that at the death of each, his or her share should be equally divided among the survivors. He made one devise to all of his children— one gift to all—to extend as long as the life of the longest liver.

The chancellor decided that this devise was in violation of section 2765, Code of 1906, "in that it devises property in succession to more than two living donees." He decreed that the provision in the will was void, and that the property therein described descended to Mr. Redmond's heirs at law as though he had died intestate. Section 2765, referred to, is as follows: "Estates in fee tail are prohibited; and every estate which, but for this statute, would be an estate in fee tail, shall be an estate in fee simple; but any person may make a conveyance or devise of lands to a succession of donees then living, not exceeding two, and to the heirs of the body of the remainderman, and, in default thereof, to the right heirs of the donor, in fee simple."

We believe that the chancellor was in error in his construction of the will. We do not see that Mr. Redmond's will is in violation of the statute of this state against perpetuities. There is not a succession of donees in the devise to his seven children. The property is given to all of them together. There is one gift. The estate in the property disposed of is a life estate. The term of this life estate is the length of the life of the longest liver. This is

not a devise of all of the property to one child for his life, and at his death to another child, and so on successively to the end. The life of each child is not to be counted in the succession of donees, but only that of the longest liver. It was Mr. Redmond's purpose that his seven children named, and as each one shall die, the survivors, should own and use the property during their lives and until the death of all of them. He desired that so long as any of the seven lived the property should belong to such of them as were living. And then at the end, when all of his children shall have died, the property goes to his grandchildren, his right heirs, in fee simple. The will is clearly expressed. The intention of the testator can easily be understood. It is not violative of the law. The children get the life estate; the grandchildren the fee.

The law relating to the questions in this case is fully presented and discussed in the case of *Henry* v. *Henderson* 60 South. 33, and we now make special reference thereto.

*Reversed.*