## SHANNON *v.* RILEY *et al.*[*]

(Division B.   April 15, 1929.   Suggestion of Error overruled June 10, 1929.)

[121 So. 808.   No. 27512.]

---

[*]As to when a testamentary gift may be considered as one to a class, see annotation in 34 L. R. A. (N. S.) 1918B, 234; 28 R. C. L. pp. 260-262; 5 R. C. L. Supp. 1524; 7 R. C. L. Supp. 983.

*J. W. Hopkins,* for appellant.

*Edgar Watkins, Holmes, Canale, Loch & Glankler, Dulaney & Jacquess* and *G. T. Fitzhugh,* for appellees.

Orally argued by *J. W. Hopkins,* for appellant, and *J. E. Holmes* and *J. W. Dulaney,* for appellees.

GRIFFITH, J. On the 1st day of September, 1918, Frank M. Norfleet, a man of advanced years and whose wife was dead, made and delivered the following instrument:

"Know all men by these presents, that I, Frank M. Norfleet, do hereby, for and in consideration of one ($1) dollar, to me in hand paid, and for other good and valuable considerations heretofore received by me, and the receipt of all of which is hereby acknowledged, bargain, sell, give, grant and convey to my son, Jesse P. Norfleet, as trustee, and in trust for himself and his sisters, Mrs. Wilson Norfleet Felder, Mrs. Ada Lea Norfleet Riley, Mrs. Eugenia Norfleet Conkrite, and his brothers, Cecil M. Norfleet and John Chambliss Norfleet, the following

described lands, together with all improvements thereon, and all personal property, such as horses, mules and other live stock, farming implements, tools, machinery, feed stuff, and all other items of personal property thereon owned by me or which I may have any interest, and used in connection with the farming and operating of said lands for agricultural purposes, or for the preservation and improvement of same, or keeping the same in repair, and all situated, lying and being in Tunica county, Mississippi, and described as follows, to-wit: [Here follows the detailed land description of a large acreage of two valuable farms, known as the Perkins and Flower Lake plantations, in Tunica county.] To have and to hold all of said lands and personal property unto him, the said Jesse P. Norfleet, as trustee aforesaid, and absolutely in trust for the following uses and purposes, to-wit:

"1. Said trustee shall operate and farm said lands during the period of ten (10) years from and after January 1, 1919, approximately on the same plan and along the same lines as they have heretofore been operated by me, using his best judgment and discretion in the matter, and during that time he shall keep said lands supplied, as far as he can reasonably do so, with the necessary labor, teams, tools, implements, etc., and materials for necessary improvements and repairs, and pay all fixed charges, such as taxes on said lands and personal property, the cost of all of which is to come out of the annual income from said property, and in performing all these duties he shall do so according to his best judgment and discretion, which judgment and discretion shall not be subject to control by any of the beneficiaries of said trust, and he shall annually divide and pay over, except as hereinafter provided, to each of his sisters and brothers and to himself, an equal share or portion of the net income or profits derived from said

farming operations until the expiration of said period of ten (10) years from said date of January 1, 1919.

"2. If during said period of ten (10) years either one of the sisters or brothers of said trustee should die leaving a child or children of his or her body surviving, then the share or portion of said net income or profits from said farming operations that would go to the one so dying is to be paid to his or her child or children surviving, and if either one of other sisters or brothers of said trustee should die without leaving a child or children of his or her body surviving, then the share or portion of the profits or income which would accrue to the one so dying is to be paid to the surviving sisters and brothers of the decedent including said trustee, share and share alike. This provision as to the disposition of the net income and profits from said lands during said period of ten (10) years is made for the protection of all of the beneficiaries of said trust (except said trustee) against misfortune or improvidence during the period of said trust, and during that time neither of said beneficiaries (except said trustee), or their descendants, is to have any right, power or authority to anticipate, pledge or encumber, or make liable in any way his or her share or interest in said net profits for debt or otherwise, and the same is to be paid over personally to each of them, as above directed, by said trustee as the same accrues, and to the exclusion of any marital rights of any husband of either of the sisters of said trustee as an heir at law, or otherwise, under the laws of the state of Mississippi.

"3. During the existence of the period of said trust, all of said lands and personal property shall be kept together without the right of partition of same on the part of either of the beneficiaries thereof, and, at the expiration of said period of ten (10) years all of said lands and personal property is then to be divided in kind among said trustee and his said sisters and brothers,

equally and share and share alike, and each one of them, except as hereinafter stated, shall then have and take absolute control of his or her share or portion of said property with the right to all rents, incomes, and profits therefrom, for and during the term of his or her natural life only, and at the death of each of them the absolute title in fee to his or her share or interest in said lands as divided, with all rents, incomes and profits therefrom, is to vest absolutely and in fee in the child or children of the body of each of them respectively, or to the descendants of such child or children which may have in the meantime died, and if said trustee, or either of his sisters or brothers should die without leaving bodily descendants of their own surviving them, then, and in that event, the share or interest in said property of the one dying is, at the expiration of said period of ten (10) years to vest in the other beneficiaries of this trust for life, and, at their death, in their descendants, in fee, share and share alike, as hereinbefore mentioned.''

The remainder of said instrument deals with some further details which do not materially affect the questions involved, and are therefore omitted.

The instrument is attacked from numerous points of assault as being, not in contravention of our common-law rule against perpetuities, but in violation of our two-donee statute, so called, which statute (section 2765, Code of 1906; section 2424, Hemingway's 1927 Code) is as follows:

''Estates in fee-tail are prohibited; and every estate which, but for this statute, would be an estate in fee-tail, shall be an estate in fee-simple; but any person may make a conveyance or a devise of lands to a succession of donees, then living, not exceeding two, and to the heirs of the body of the remainderman, and, in default thereof, to the right heirs of the donor, in fee-simple.''

In this attack, the chief reliance is placed upon the cases of *Smith* v. *Muse,* 134 Miss. 827, 98 So. 436, *Hudson*

v. *Gray,* 58 Miss. 882, *Nicholson* v. *Fields,* 111 Miss. 638, 71 So. 900, *Scott* v. *Turner,* 137 Miss. 636, 102 So. 467, and those of similar import. After a thorough examination of these and all our cases on the subject, as well as the authority of numerous cases from other states, and the various texts, we have reached the conclusion that the donation during the ten-year period of the trust was to the beneficiaries as a class, and that in counting that period only one donee is involved in the count.

The case as to the said ten-year trust period comes squarely within the principles announced in *Redmond* v. *Redmond,* 104 Miss. 512, 61 So. 552, and we think that is enough to say of it, so far as any of our previous decisions are concerned. See, also, *Henry* v. *Henderson,* 101 Miss. 751, 58 So. 354; *Bullard* v. *Bullard,* 132 Miss. 544, 97 So. 1.

But, if there were no precedent for this case in our books, we would not greatly hesitate to make one of it, for we maintain and hold that there is enough of enlightenment in our law to permit of a reasonable arrangement, such as is illustrated by this case, by which a family may be for a time preserved and its property saved—a proposition upon which natural equity and cultivated reason unite in commending it to our sympathetic and favorable consideration. We will suppose a man who has a family of seven children, from five to fifteen years of age. He has a sufficient estate, which, if well and intelligently managed, with active and industrious oversight, would out of its income maintain and educate the children. He meets with a completely disabling accident, or becomes afflicted with a lingering and paralyzing disease. Other details of the situation are such that, unless he can make a deed to an active trustee and thus safely arrange his affairs while he may, the estate would be wasted and the incompetent heirs become charges upon others. And there are those cases among children, although adults, of spendthrifts, inebriates, feeble-minded, and incompetents

for divers disqualifying characteristics, wherein the social and material public good is promoted by a joint temporary arrangement for these children, and thereafter passing over the estate to the grandchildren; but we need not extend illustration. If it should be construed that under our two-donee statute a class donation, such as is the case before us, could not be made without counting each member of the class as a successive donee, for the mere reason that they are each, although in a limited sense, a possible successor, then the statute would be unendurable in its potentiality for mischief. One of its consequences would be that the head of a large family would have less lawful privilege than if the family consisted of only two children—a proposition which would not be contended for directly or openly for a moment. We declare that the case here is neither within the letter of the statute, nor within its spirit.

We do not attempt any fixed or precise definition of class donees. Able text-writers and jurists have repeatedly attempted it, with no more success than have been the efforts to define reasonable doubt, proximate cause, and numerous other terms in the law, wherein, at last, the simple word or words originally selected to denote the idea to be conveyed have been found best so far as concerns any universal test, without more. There is, and always will be, such a numberless variety in the language and circumstances in and about the instruments to be construed in cases within the field of this inquiry that it is neither possible nor desirable to place the terms here being considered in the rigid mold of a fixed definition or formula, no more than it would be possible or desirable to make or offer a garment that would fit every person. And, if it be said that courts, in applying the law for the determination of the rights of the people, should, in doing so, propound always such definite terms that the people could safely use and follow them in their business affairs, with a clear understanding of them,

then it might be replied, upon a parity of reasoning, that the farmer could not safely use a horse to draw his plow, because of the fact that no plowman, or certainly only a few, could put on paper a picture of a horse with such precision of line, or in words with such accuracy of description, that thereby a person who had never seen the animal would know one at first sight. It is enough that some general or approximate description be given, and that by seeing one and having it pointed out as such, then by a comparison with other animals which resemble the horse, but yet is not one, the experienced mind comes to know one with all the definiteness requisite to a practical use.

All we shall attempt, therefore, is an approximation or general description of what is meant by a gift to a class, which we shall state thus: When there is a gift or grant to a number of persons, although one or all of them may be named, if the naming of them was intended merely as a matter of identification, and these persons are united or connected by some common tie, and it is clear that the donor was looking to the body as a whole or as a group, rather than to the members constituting the body as individuals, and that he intended that the group might fluctuate in numbers, so that, to preserve the group, if one or more of that body died during the period in question, the survivors should take the gift between them, either in equal or in some other naturally related portions, the gift is to be construed as one given to them as a class. 28 R. C. L., p. 260 et seq.; Thompson on Construction of Wills, sections 200-211; 1 Jarman on Wills (6 Ed.), pp. 262, 336, 433; 2 Page on Wills (2 Ed.), section 918 et seq.; 40 Cyc., p. 1473.

Therefore, with the above approximate statement as a basis of examination, it is only necessary here to look at the provision that is under attack, insofar as it concerns the ten-year trust period, together with all the other provisions of the instrument, and note that, upon

a close, but yet common-sense, view of it, which is to say, putting aside the use of strained and labored technicalities, there unfolds out of it the clear intent and purpose to treat and consider the income-taking beneficiaries under it as a unified class, keeping them together during the ten-year period as a connected group, with the appropriate provisions for the naturally interrelated fluctuations necessary, and no more than necessary, to preserve the unity of the group, and the keeping together at the same time and for the same period of the income-producing property as an undivided unity, when, so observing, we find and see an actual concrete case of a donation to a class; and we have set it out in full, so that it may thus be seen rather than merely described or defined. For further definitions, descriptions, and all manner of illustrative cases, we point to *Blackstone* v. *Althouse,* 278 Ill. 481, 116 N. E. 154, L. R. A. 1918B, 230, and the learned annotations, with the numerous cases cited and distinguished in the notes; *Corbett* v. *Skaggs,* 111 Kan. 380, 207 P. 819, 28 A. L. R. 1230, and notes; *In re King,* 200 N. Y. 189, 93 N. E. 484, 34 L. R. A. (N. S.) 945, and notes, 21 Ann. Cas. 412.; *Welch* v. *Blanchard,* 208 Mass. 523, 94 N. E. 811, 33 L. R. A. (N. S.) 1, and notes; *Branton* v. *Buckley,* 99 Miss. 116, 54 So. 850, L. R. A. 1917C, 527; *Marx* v. *Hale,* 131 Miss. 290, 95 So. 441; *Bolles* v. *Smith,* 39 Conn. 217; *Dove* v. *Johnson,* 141 Mass. 287, 5 N. E. 520; *Hood* v. *Boardman,* 148 Mass. 330, 19 N. E. 379; *Meserve* v. *Haak,* 191 Mass. 220, 77 N. E. 377; *Monson* v. *Paine,* 22 Misc. Rep. 639, 50 N. Y. S. 38; *Darling* v. *Witherbee,* 36 R. I. 459, 90 A. 751; *Tate* v. *Tate,* 126 Tenn. 169, 148 S. W. 1042.

It is only when the ten-year period is at an end, and when, at that definite time, the purpose and intent of a separation of the respective interests comes into operation, so as to make these separate interests individual and separately personal, that the class is broken, and it is then for the first time that the individual benefits and

interests as such come into existence. And when that definite time has come, the instrument shows and provides that the separate interests are to be determined upon the definite facts as they then exist, namely, the then surviving children of the donor are each to take in the property a separate part then for the first time divided and delivered over to him or her in kind, and in that separate and separated part a life estate, which thereupon will make the said child of the donor a second donee under the statute, and at the death of each child the said separate and separated property in which he or she had a life estate goes, in fee simple, to the heirs of his or her body; that is, to the "heirs of the body of the remainderman," which is exactly what, as the word "remainderman" has been construed under this statute, the statute allows. If, at the time of the termination of the life estate, there be no heirs of the body of the particular remainderman, then the fee in that separate portion goes to the heirs at law of the donor, in the same manner as would a lapsed devise. If, at the end of the said ten-year period, any child of said donor has, in the meantime, died leaving a child or children, there is a plain provision, or at least it is plain, from the entire context of the instrument, that the grandchild or grandchildren of the donor shall take at said time, *in fee simple,* the separate interest or parcel then to be divided and set apart, which the parent of said grandchild would have taken, although only for life, had the said parent been living at the end of the said ten-year period.

It is to be particularly and carefully observed that, after the separate interests have become vested at the end of the ten-year period, there is no effort made to control the devolution of the title beyond what has already been stated, and which, as stated, is within the allowances of the statute. After the accrual or vestiture of the separate interests, or, in other words, after the seizins, brought into operation by the facts in existence

at the end of the said ten-year period, there are no fluctuations or retractions by cross-remainders and the like from one vested interest over into another separate interest, as was the trouble in *Smith* v. *Muse, supra,* and other cases of that kind.

*Reversed and remanded.*